WILLIAM and JAMES STEELE *against* the PHŒNIX INSURANCE COMPANY. †

THIS cause came before the court upon a point reserved by his honour Judge *Brackenridge* at the trial in *October* last.

It was an action upon a policy of insurance to recover a total loss, which the defendants resisted upon the ground of concealment. The cause was first tried before the Chief Justice, where a verdict was found for the plaintiffs, which was afterwards set aside as being against the weight of evidence. Upon the second trial, the plaintiffs' counsel shewed to the court that the suit was brought to *March* term 1805; that on the third of *June* following, the plaintiffs assigned all their property to assignees for the benefit of creditors, from whom they received a release in *November* 1805; and that on the morning of the trial, a paper had been filed in court, declaring that the suit was for the use of the assignees, by whom, all the costs, including the whole costs of trial, were then paid. They produced also a release from both the plaintiffs to the surviving assignees, dated the day of the trial, of all money to be recovered on the policy in question, for the use and benefit of the creditors mentioned in the assignment of the 3d *June* 1805; and they then offered *William Steele*, one of the plaintiffs, as a witness in the cause.

The witness was objected to; but Judge *Brackenridge* admitted him, reserving the point for consideration in bank.

*Levy* and *Ingersoll* for the plaintiffs. There is no difficulty in the case, unless the court will now overrule a series of decisions. In *Calhoun* v. *The Insurance Company of Pennsylvania*, the plaintiff, having no interest, and the costs being paid, was admitted as a witness by the late Judge *Smith*, who said it had frequently been done. In *Kerr for the use of Taylor et al.* v. *Hawthorn*, *Taylor*, who was merely a trustee, was admitted, the costs being paid. In *Vansant* v. *Boileau* (a) the only objection to the admission of an executor, who was plaintiff in a feigned issue, was his liability for costs. And

1 *Binn.* 444.

in *M'Ewen* v. *Gibbs*, (a) which is in point, it appearing that the assignees of the plaintiff carried on the suit, and had entered into security for costs, and that the plaintiff was a certificated bankrupt, the court upon the authority of a former decision, directed him to be sworn. Upon what principle can a plaintiff circumstanced like *William Steele*, be held incompetent? The most general, and by far the most reasonable objection to competency, arises from interest. He had no interest whatever in the suit. He could neither gain nor lose. The benefit of the verdict was transferred to his assignees by the general assignment, recently confirmed, and extended to any possible surplus by this release; and the penalty of his failure in the cause, the payment of costs, was removed by the unconditional payment of them before he was sworn. In what respect does the case differ from a suit by a nominal plaintiff, for instance, the assignor of a chose in action, who is a mere name on the record, whom the court will not suffer to discontinue, *M'Cullum* v. *Cox*, (b) and who has been uniformly admitted upon the payment of costs. In fact it is his case precisely; and the court seeing who the real party in interest was, would have gone so far as to compel the assignees by attachment to pay the costs, in case of necessity. Is it contended that he was interested at the commencement of the suit, and that no subsequent event should restore his competency? What is more common than for persons to release an obvious interest at the very moment they are going to be sworn? Nay further, if a release be tendered, though it be not accepted, the witness is competent. *Peake's Ev.* 166. It is of no importance what his interest has been, if it be removed before he gives evidence. Can a distinction be taken between the effect of a voluntary assignment like this, and an assignment by a bankrupt? For there is no doubt that in *England*, as well as in this state, a certificated bankrupt, who has released his interest in the surplus of his estate, is a good witness. *Butler* v. *Cooke.* (c) As to this point there can be no difference. The principle is the removal of interest, which is done with the same effect by either kind of assignment. Is there any rule of law then, which precludes a

(a) 4 *Dall.* 137.     (b) 1 *Dall.* 139.     (c) *Cowp.* 70.

plaintiff from being a witness, merely because he is plaintiff? No such rule can be shewn. It is negatived by a decision in our own state; *M'Ewen* v. *Gibbs*. *Peake* states it only as a *general* rule, *Peake's Ev.* 157. And inasmuch as there can be no doubt that the real party in interest might, if there were a court of equity, inforce his equitable right against the defendant, without introducing the name of the legal plaintiff, in which case he certainly might have the testimony of the latter, it would be a severe rule upon equitable plaintiffs, if the necessary introduction of a name should deprive them of important testimony. In fact, no objection can be urged against the admission of such a witness, except what is founded upon suggestions of possible fraud, perjury, colourable assignments and the like, which either go to the credit of the witness when sworn, or suppose a very different case from the present. If there is fraud, there must be a remaining interest. If there is a temptation to commit perjury, the witness must be observed closely by the jury. If the assignment is fictitious, the witness is still the real plaintiff. All these are solid objections in particular cases; but they have never been made the foundation of such a general rule as will exclude a plaintiff, who has honestly parted with all his interest by a general assignment in satisfaction of his debts, and is clear of liability to costs when he comes to the book.

*Rawle* contrà. What has passed at *Nisi Prius*, or has been ruled without argument and consideration, should have but little weight. Very dangerous innovations in the law of evidence, have been made in *Pennsylvania* since the revolution. No other country regulated by the same code, has gone as far; and if this court cannot overthrow past decisions, still, if they trench too deeply upon the fundamental rules of evidence, at least the court may limit their application and authority to cases of precisely the same kind. There has never yet been an instance in which a plaintiff who has made a voluntary assignment after action brought, has been permitted to give evidence in the cause; and this is sufficient to open the case for the application of general principles. The point has probably never occurred before; perhaps because under such circumstances a plaintiff has never before been

offered to testify; and the inevitable tendency to injustice which such an admission has, is quite sufficient to justify the court in excluding the plaintiff in the suit, under all circumstances whatever. The system of evidence adopted by the common law, is an admirable body of rules, all of which are calculated, in the first place to aid in attaining the truth, by making a most judicious selection of the channels through which it shall be sought, and in the next place to preserve the peace and integrity of society, by excluding either the witness or the evidence in cases where its admission would be followed by a sacrifice of those important interests. The law of evidence cannot be justly estimated without contemplating it under both of these aspects. Under both, the influence of principles of public policy may be distinctly recognised in a variety of what at first may strike as artificial rules, without any better authority than precedent, but which upon close examination appear to be deeply laid in a knowledge of mankind, and in a regard for the great interests of the community. Hence an attorney cannot disclose the communications of his client. Husband and wife cannot testify either for or against each other. A mother cannot bastardize her issue by proving non-access of her husband. *Peake* 183. A man who apprehends himself to be interested, cannot, whatever may be the fact, be heard as a witness. *M'Veaugh* v. *Goods.* (*a*) One who lays a wager to disqualify himself, shall still be competent. And a party to negotiable paper shall not be heard to impeach it. *Coleman* v. *Wise* (*b*), *Allen* v. *Holkins* (*c*), *Churchill* v. *Suter* (*d*), *Baring* v. *Shippen* (*e*). These are all cases in which the principle of interest does not shew itself; but on the contrary a motive of policy to prevent those sacrifices of professional honour, of domestic peace, and of truth, which most generally would follow from permitting such parties to testify, or such testimony to be given. It is no answer to say, that when the court discover the fraud, they may reject the witness. The difficulty of detecting the fraud, or rather the universal tendency to fraud which the practice of admitting the witness has, is a foundation for a general rule of exclusion. What principle of public policy

(*a*) 1 *Dall.* 62.      (*c*) 1 *Day.* 17.      (*e*) 2 *Binn.* 165.
(*b*) 2 *Johns.* 165.     (*d*) 4 *Mass. Rep.* 161.

1811.

STEELE
*v.*
PHŒNIX
INSURANCE
COMPANY.

applies to any of these cases, which does not apply to the case of a plaintiff like the present? He institutes the action with a strong sense of his personal interest in it; he finds in the progress of the cause, perhaps upon the first trial, where is the pinch, and voluntarily transfers his interest to a third person, under some covert agreement which certainly a court of law cannot detect, in order to meet the difficulty. This is not only possible, but bad men will often do it, and with impunity. Why should a man be prohibited from disqualifying himself by a wager, and yet be permitted to sell his interest, and make himself a witness pending the action? If the law treats him like a criminal, and takes his estate from him against his will, as in the case of bankruptcy, there is less reason to suspect, because there is less opportunity to practise, fraud; and hence it is probable the courts in *Pennsylvania* have permitted such a plaintiff to give evidence. But in *England* no instance can be shewn of any case in which the plaintiff has been received. In *M'Clenachan* v. *Scott*, cited in a note to *Field* v. *Biddle*, (*a*) president *Biddle* told me that he intended to lay down the rule, so as to limit the competency of the plaintiff to cases of bankruptcy, and to exclude the case of a voluntary assignment; but the decision was rendered unnecessary, by the verdict. In the case of *Cogbill* v. *Cogbill* (*b*) the Supreme Court of appeals in *Virginia* have gone the whole length of my argument, by deciding that a party appellee could not be received as a witness for his co-appellees, either upon releasing to them his interest, or upon his or their depositing a sum sufficient to pay costs; and judge *Roane* conceives the case of *The King* v. *The Governors of St. Mary Magdalen* (*c*) to establish the position, that if a person is liable for costs in the first instance as a *party*, (even though he be only a trustee, and is to be reimbursed such costs out of a particular fund) he is rendered incompetent, and can *by no act* be qualified as a witness. The rule contended for is moreover unequal in the highest degree, in its operation. If the plaintiff knows any thing of importance to the defendant, the latter has no means of applying to the conscience of his opponent, for a disclosure, and there-

(*a*) 2 *Dall.* 172.    (*b*) 2 *Hen. & Mun*, 467.    (*c*) 3 *East.* 7.

fore, he cannot obtain it; it is only when it will benefit the plaintiff himself, or rather the assignee of the plaintiff, that the court will hear of it. This circumstance should be considered in connexion with the others in estimating the great danger of admitting the witness, and the necessity of interposing a general rule to exclude all witnesses who have ever stood in the relation of party in the cause.

TILGHMAN C. J. If *William Steele* was not a competent witness, it must be, either because he was interested at the time the action was commenced, or because he was interested at the time he was offered as a witness, or because he was a party to the suit, or because it is against the principles of sound policy to admit him. All the objections which have been urged in the argument, may be reduced to one of these four heads.

1. The reason that interest renders a witness incompetent, is, that it may be supposed to have an influence on his mind, at the time that he gives his testimony. That is the time therefore to which we are to look. If the deposition of a witness is taken, while he is interested, and he becomes disinterested before the trial, the deposition cannot be read. On the other hand, if a witness comes to the bar interested, and devests himself at the bar of his interest, by a release, he is a good witness. So far therefore as an objection arises from interest, it is of no consequence what *Steele's* situation was at the commencement of the action.

2. Whether he was interested at the time he gave his testimony, is a matter of fact. It appears to me that he was not, because the suit was at that time carried on by the assignees for the use of his creditors, who paid all the costs, and he had devested himself of all advantage, which might possibly arise to him from any surplus of his estate, by a release.

3. It is insisted on by the defendants as a peremptory rule of law, that the plaintiff in the action cannot be a witness. Such a rule has not been proved. It is true indeed, that no instance has been shewn of the plaintiff's being received as a witness in an action *at law* in *England*. The fact is, that in almost every instance, the plaintiff is interested either in the subject of the suit, or in the costs, and therefore the con-

clusion may have been drawn without sufficient reflection, that in no case can he be a witness. The reason of the law is the life of the law. Now what good reason is there, why a man's testimony should be excluded, merely because his name is placed on the record as a party to a suit, in which he has no manner of interest. The reason for admitting such evidence is much stronger *here than* in *England.* In this state we have no court of Chancery, and therefore the assignee of a chose in action is compelled to bring his action in the name of the assignor; whereas in *England* he may file a bill in equity, in his own name, and thus in some instances obviate the objection arising from the assignor being plaintiff on the record, in case he wants to make use of his testimony. Our courts take notice of the equitable owner, although the suit is not brought in his name. In the case of *M'Cullum* v. *Coxe,* 1 *Dall.* 139., the plaintiff, who had assigned the cause of action to another person, wanted to discontinue, but the court would not permit him. It is the experience of every day, that the assignee brings an action in the name of the assignor, without consulting or even letting him know of it; and in such case, we consider the assignor as out of the question, and should issue an attachment for costs against the person for whose use the suit is brought, in case of a judgment for the defendant. We have direct authority in our own courts against the rule, that the plaintiff cannot be a witness. In *M'Ewen* v. *Gibbs,* 4 *Dall.* 137., it was decided, that the plaintiff being a bankrupt, who had obtained his certificate, and released his interest in the surplus, might be a witness. It does not appear by the report of this case, whether the plaintiff became a bankrupt before or after the action was brought; but I can see no good reason for a distinction between these cases, provided the interest arising from liability to costs is removed in the latter case. And indeed we are not without *authority,* when the bankruptcy takes place after the commencement of the action; for that was the very point determined by president *Biddle* in *M'Clenachan* v. *Scott,* 2 *Dall.* 172. *note.* It has been observed by Mr. *Rawle,* that president *Biddle* made a distinction between an assignment in case of bankruptcy, and a voluntary assignment. What ground there is for such a distinction, may more

properly be considered under the fourth head, the supposed *impolicy* of admitting this kind of evidence.

4. When we talk of altering the law of evidence from motives of policy, it approaches so near to the language of legislation, that to authorize it, the policy must be manifest, and the mischief to be avoided, great. The general rule is, that every person not infamous or interested, is a competent witness. To this there have been exceptions, perhaps as ancient as the rule. Husband and wife shall not testify for or against each other. An attorney at law shall not betray the confidence of his client. There is another exception, the birth of modern times, introduced no doubt from motives of policy. A man shall not be permitted to destroy by *his own* testimony, a negotiable instrument to which he has given credit by his signature. But this last exception has not been carried without great opposition from very high authority. Indeed so fluctuating have been the opinions of judges in *England*, that the point can hardly be considered as yet established in that country, although with us it is fixed. Now the difference on this question, did not arise from any difference of opinion concerning the policy of supporting the credit of commercial paper, but on the *right* of the *court* to alter the law of evidence on the ground of policy. Let us now consider the danger, which it is said, will arise from admitting the testimony in the case before the court. It is supposed that bad men will transfer their rights of action to third persons, in order to open the way for their own testimony. This objection applies equally to assignments made *before* or *after* the commencement of the action, and it applies also, to cases over which the court has no control, such as sales of rights to land, and assignments of bonds under our act of assembly, in both which cases, the vendors may undoubtedly be witnesses, if they are devested of all interest. It will be remembered too, that before the witness is admitted, he must satisfy the *court*, that he has been guilty of no collusion; that he has devested himself of every particle of interest; that he is neither to gain nor lose by the event of the suit; and to these points he must answer upon oath. If he really is entirely disinterested, I see no great danger from the circumstance of his having been *once* interested.

1811.

STEELE
*v.*
PHŒNIX
INSURANCE
COMPANY.

STEELE
*v.*
PHŒNIX
INSURANCE
COMPANY.

And after all the jury will judge of his credibility. How can the case before us, be distinguished from that of a certificated bankrupt? It is said, that the assignment of the bankrupt was compelled by law, because in the eye of the law he was *criminal.* The fact is, that nineteen commissions in twenty are sued out at the request of the bankrupt. But if it be objected that this is not the supposition of the law, I ask whether a man's having acted criminally is a recommendation of his evidence. I take it, that the true reason of the bankrupt's being received as a witness, is, that he has no longer any interest in the thing in controversy; and this reason applies equally to voluntary assignments. Where a man assigns all his property for the benefit of all his creditors, there is in general no reason to suspect collusion; but where he assigns a particular thing to an individual, (especially pending the action) and then comes forward to make out the case by his own testimony, he should be watched narrowly. In all such cases, the court will admit or reject the testimony, according to their conviction of the assignment being a *bona fide* transaction or not. In the case before us, there was no suspicion of fraud.

I am therefore satisfied, that the evidence was properly admitted.

YEATES J. Upon the point reserved in this case, it has been urged by the defendants' counsel, that *William Steele* ought not to have been admitted as a witness; not only on the ground of mere interest, but on the principles of sound extended policy.

The general rule is, that a party shall not be sworn in his own cause. He is interested in the event, and is therefore excluded. But a nominal plaintiff can only be rejected, on the ground of his liability to costs. The court will take judicial notice, who are the real parties, as in the case of *M'Cullum* v. *Coxe*, 1 *Dall.* 139., and an executor may be sworn in a cause relating to the will, where he is not a residuary legatee, because he is merely a trustee. *Gilb. Law Evid.* 120.

The cases on this head were very fully examined in the cause of *John Field* and *John Bernard* for the use of *Oxley & Hancock* v. *James Biddle* esq., tried in bank, *April* term

1792. It is reported in 2 *Dall.* 171., but I have a fuller note of the court's opinion on the point of evidence. There the court expressed themselves thus: " We feel a strong repugnance against the testimony offered; our present inclination is against the receiving of *Field* as a witness. We know of no case in the books, or by our practice, where a plaintiff has been admitted a witness to substantiate his demand to a jury. This point was much contested in an action of covenant tried at *York Nisi Prius* in *May* 1791, between the executors of *Andrew Cochran* plaintiffs, and the executors of *William Cochran* defendants. There *James M'Kissom*, one of the plaintiffs, was offered as a witness, and it appeared that he had no part of the residue devised to him by the testator, and the plaintiffs offered to lodge the costs in court; but he was rejected. The plaintiffs here might have assigned the bond to *Oxley* and *Hancock*, if they chose it, and thereby made either of themselves witnesses. As they have not done so, the present matter stands precisely in the same situation, as a factor selling goods for his principal, and bringing a suit for the money in his own name, where he is repelled from giving testimony. But if the suit had been brought in the name of his constituent, the factor would be a competent witness, though he got 1s. in the pound commissions on the sale. 1 *Atky.* 248., 3 *Wil.* 40. However, if the plaintiffs' counsel are willing to run the risk, we will not prevent Mr. *Field* from giving his testimony; but if he is admitted, and a verdict should pass for the plaintiffs, and upon a more full consideration we shall retain our present opinion, a new trial will be awarded without costs." Mr. *Field* was accordingly admitted as a witness; but the jury having found a verdict for the defendant, the question was not again stirred.

That case was dissimilar in one striking particular, from the one now before the court. *Field* was the agent of merchants beyond sea. If he, or some friend in his behalf, had lodged the costs of the action with the prothonotary of this court, a verdict for the plaintiffs would necessarily have effected a return of the money paid; and consequently Mr. *Field* was immediately interested in the event of the suit. But here the assignees of *William* and *James Steele* paid the full costs out of their own pockets, and whether a verdict

passed for the plaintiffs or defendants, they could neither gain nor lose in a pecuniary point of view. I cannot conceive the smallest *scintilla* of interest in *William Steele.* It is true the action was at first instituted to *March* term 1805 for the benefit of the partners; but they had become insolvent, and within three months afterwards, had assigned over all their property real and personal for the benefit of their creditors in general *pro rata.* Their creditors executed releases to them in *November* following, and previous to the offer of the testimony, they had released to their assignees all moneys which might be recovered under this policy of insurance. After the execution of the assignment in *June* 1805, they had no longer any control over this action; it was wholly in the option of their assignees, whether they would proceed in the suit, or desist therefrom.

On the score of sound policy, I cannot distinguish between a voluntary assignment to creditors in general in cases of insolvency, and the compulsory assignment produced by the statutes of bankruptcy. A certificated bankrupt may be a witness in *England* upon releasing the fund. *Peake's Evid.* 168. And the same point has been determined in this state, in several cases, where the costs have been paid, or security given for them. It is much to be wished, that more frequent instances would occur of early fair and honorable surrenders of the property of unfortunate merchants, who have failed in trade from a variety of causes, to which mercantile enterprises are naturally subjected. If we had a court of equity, either party according to the cases cited by the plaintiffs, might have compelled *Steele* to make a full disclosure upon oath, of all the circumstances attending this transaction. It is no solid objection to assert, that by introducing the original party as a witness, a door is thrown open to fraudulent practices, wherein a secret interest might be secured to the failing debtor. The same observation is applicable to a vendor of lands, who conveys without covenants of warranty; or where there are such covenants, on the vendee executing a release at the bar; and yet in such cases, it is matter of daily practice to admit such witnesses to be sworn. Besides, there can be no doubt, that where a voluntary assignment was made to appear clearly to the court to be collusive, they would in-

terpose and reject the witness; and where there occurred any difficulty as to the fact, they would instruct the jury to pay no regard to the testimony of the witness, if they were satisfied, that the assignment was merely colourable, with an intention to defraud creditors. The jury must necessarily judge of his credit.

Upon the whole matter I am of opinion, that the testimony of *William Steele* was properly admitted to go to the jury, and that judgment be entered for the plaintiffs.

BRACKENRIDGE J. At the time the point was reserved by me, I could see no satisfactory reason why the witness should not be heard; and I am now perfectly satisfied that he was competent.

Judgment for plaintiffs.