## Haus *versus* Palmer.

1. Though a legatee may release or renounce a legacy, and thus become a competent witness to prove a will, yet he cannot make himself competent by assigning his interest to another. Search's Appeal, 1 *Harris* 108, overruled.

2. The presence of two disinterested persons as witnesses, at the making of a nuncupative will, is necessary to its validity.

3. It is necessary to the validity of a nuncupative will that each requisite be very clearly proved by two witnesses, to wit, its substance, the intent to will, the *rogatio testium*, and the necessity that prevents its being reduced to writing.

4. The general rule requiring all wills to be in writing is intended to be as nearly universal as possible, and the exception in favor of nuncupative wills must be very strictly administered, and confined to cases of necessity.

5. Ignorance of the general rule, or carelessness about attending to it when the testator is conscious that his sickness is unto death, or mere aversion to be troubled about it, does not constitute such necessity.

6. On an issue to try the validity of a nuncupative will, the declaration ought to contain the substance of the will offered to be proved, or it ought to appear in some part of the record.

ERROR to the Court of Common Pleas of *Centre county*, on a feigned issue, directed by the Register's Court to try the validity of a nuncupative will, alleged to have been made by Susanna Haus, deceased. The declaration does not set out any will, and there is no copy of it connected with the record; but it alleges that one was made, and avers that, in making it, the testatrix did comply with all the requisites specified in the Act of 1833, relating to nuncupative wills; and on this averment the issue was joined. The persons intended to be benefited by the will, were, Barbara Palmer, an only sister of the decedent; Mary Norman, a niece, daughter of Mrs. Palmer; Philip Wolf, an only brother; and Jacob Haus, the husband. The will was disputed by the husband; and Mary Norman assigned her interest to her mother, Mrs. Palmer, in order to become a witness. Of consequence, the issue was framed between Barbara Palmer and Philip Wolf as plaintiffs, and Jacob Haus as defendant.

The two main witnesses on the trial were Sarah Moore and Mary Norman. As to the substance of the will, they testified that Mrs. Norman and Mrs. Palmer were to have testatrix's clothes; the hus-

[Haus *v.* Palmer.]

band was to have a good bed and what else he needed; and the rest was to go to her brother and sister: the husband was to have the house and land as long as he lived, and then it was to go to her brother and sister.

As to the intention to make a will, Sarah Moore testified that the old woman, on introducing the subject, said, that "after she was dead" the above disposition should be made. Mrs. Moore suggested, that she ought to have a will written, and expressed a doubt whether her evidence would answer. Mrs. Haus said, "Why not? the deeds and notes are in my name: nobody can come at my property: it will all have to go to my brother and sister." Mrs. Palmer afterwards repeated the suggestion, and Mrs. Haus said, "Let me alone: I have done all I can do: you have all heard what I have said." Mary Norman's testimony was of the same character, except that she said that Mrs. Haus introduced the subject by saying "she was about to tell us what to do with her things." On the day before she spoke about making a will, and thought she could speak about it next day.

As to the calling upon persons to bear witness to the will, the form of the Act was not pursued. Mrs. Moore says, that when she came in, Mrs. Haus said, "she was glad she had come," and then went on to state what she wanted to be done after she was dead.

As to the condition of Mrs. Haus's health, and the necessity of dispensing with a written will, it was testified that the alleged will was made at her own house, on July 12, 1852, in the forenoon; that she kept her senses until she died, on the 16th of July, in the afternoon; that in the interval she was averse to speaking, and did speak very little, her disease being in her throat; that on the 11th she had talked about making a will, and said she would speak about it next morning if she could; that three or four days before that, she had talked about making a will, but said she was so sick she did not feel like doing anything; that she then had no hopes of recovery; that she had been sickly for a good while, and was confined to her bed over two weeks before she died.

The verdict was in favor of the plaintiff.

The only errors assigned, that need to be noticed, were

1. The admission of Mary Norman as a witness.

2. The refusal of the Court to affirm the defendant's second proposition, "that the alleged will has not been made in such extremity of last sickness as precluded a written will." The Court submitted this to the jury, with instruction, that if, after the making of the verbal will, Mrs. Haus was in a condition of body and mind fit to make a written will, the verbal one is not good.

3. The refusal of the Court to affirm the fourth proposition of the

[Haus v. Palmer.]

defendant, "that if the jury believe from the evidence, that, for several days before the making of the alleged verbal will, the deceased was fully conscious of her situation, and that her disease must shortly terminate in death; that the subject of making her will was present to her mind, and that she had afterwards full time and opportunity to have her will put in writing, the plaintiffs cannot recover."

4. That the Court neglected to instruct the jury that a married woman cannot make a nuncupative will.

It did not appear that the latter point was raised in the Court below.

*McAllister* and *Curtin*, for the plaintiff in error.—Mrs. Norman could not make herself competent by assigning her interest. The case of Search's Appeal, 1 *Harris* 108, is anomalous. It follows the cases which had their origin in Steel *v.* Phœnix Insurance Company, 3 *Binn.* 306, when it ought to have followed Post *v.* Avery, 5 *W. & Ser.* 510, which overrules them. And if this is so, she cannot be a witness. The law requires two witnesses to such a will, and they must necessarily be present as witnesses: Hawes *v.* Humphrey, 9 *Pick.* 350; Sears *v.* Dillingham, 12 *Mass.* 361. There was no such surprise or urgency in this case as to call for a verbal will, and on all the facts the Court ought to have said so: Porter's Appeal, 10 *State Rep.* 258. The fact that Mrs. Haus was a married woman, clearly appears, and the Court ought to have instructed the jury, that the Act of April 11, 1848, § 7, does not authorize her to make a verbal will.

*Lynn* and *Hale*, contrà.—The competency of Mrs. Norman is proved by the cases of Kerns *v.* Soxman, 16 *Ser. & R.* 315; McIlroy *v.* McIlroy, 1 *Rawle* 433; Search's Appeal, 1 *Harris* 108; see also 4 *State Rep.* 373. The cases from Massachusetts are founded on a statute differing somewhat from ours. As to the condition of Mrs. Haus, the Court could do nothing else than leave that to the jury, and their instructions were correct. The point as to Mrs. Haus being a married woman cannot be raised here: 5 *W. & Ser.* 87; 3 *State Rep.* 50; 1 *Id.* 374; 6 *Id.* 483; 7 *Id.* 108.

The opinion of the Court was delivered by

LOWRIE, J.—The Court below followed Search's Appeal in the admission of Mrs. Norman as a witness; but that case is based principally upon the illegitimate line of decisions begotten by the case of Steel *v.* Phœnix Ins. Co., 3 *Binn.* 306, which were all overruled by Post *v.* Avery, 5 *W. & Ser.* 510. The other cases relied on in Search's Appeal contain the principles, that a legatee

[Hans v. Palmer.]

releasing (not assigning) his claim, may be a witness to prove the will: *Vin. Ab. Tit. Evidence, F. Pl.* 53; and that legatees, or distributees, releasing all claim upon the executors or administrators, as to the matter in controversy, may be witnesses in actions to recover assets of the estate: 1 *Ser. & R.* 275; 7 *State Rep.* 315; 13 *Mass.* 393; 9 *Johns.* 123. But these principles do not include the case of a devisee or legatee assigning his claim, in order to prove the will on which his claim depends; for no one is bound to accept a benefit thrown upon him by testacy or intestacy, and if he rejects it, he is without interest; whereas, one who assigns the benefit first accepts it, and then, if he wants to be a witness, gets clear of it for a reward proportioned to the distinctness of the testimony which he is expected to give. Our law does not punish champerty as a crime, but it does not encourage it, nor by its very rules expose people to the temptation of perjury or subornation of it.

In some states, a devise or bequest to a necessary witness is void; and such must be practically the case wherever interest produces incompetency. It is practically so, because the estate must be released from the claim before the legatee or devisee can be admitted to prove the will. If he does not release or renounce, he ought to be a party to the issue to test the validity of the will, and he cannot affect the issue by his testimony. The principle that was restored by Post v. Avery excludes Mrs. Norman as a witness.

It has been further argued, that a nuncupative will is of no validity, unless there were two disinterested persons present at the making of it, who were then competent as witnesses: and as it may be supposed that the objection already discussed may in some way be overcome, we feel bound to consider the competency of Mrs. Norman in this aspect. The proposition is correct. The evidence of a verbal will is part of its very essence. The law makes it so, when it requires that some persons present shall be called upon by the testator to bear witness that such is his will, and that two of them must prove it. When the law requires persons to bear witness, it means that they shall be competent as witnesses. We make it speak nonsense, if we make it mean that the parties shall bear witness, a phraseology which, even in common parlance, is not free from absurdity. It is of great importance that there should be disinterested persons present at the making of such wills, and the law intended to provide for this. It may be that the rule sometimes defeats verbal wills. But what of that? People often die unintentionally intestate; but the general rule is too valuable to be endangered by accommodating it to isolated cases of hardship.

[Hans *v.* Palmer.]

We are now to speak of the case on the supposition that such evidence as is here presented should legally appear. The law is very fully expounded in Priscilla Yarnall's Will, 4 *Rawle* 46, Gertrude Fricke's Will, 4 *W. & Ser.* 360, and Werkheiser's Will, 6 *Id.* 189; and we shall repeat as little of it as possible. The substance of the will, the intent to will, the call upon two or more disinterested persons to bear witness to it as a will, and the necessity of resorting to and depending upon a verbal will, must each and all appear with great clearness, in order to amount to proof. Here the intent was doubtful, the witnesses wanting, and the necessity not appearing, and the Court would have been justified in affirming the defendant's second point, and would have been bound to do it, if, instead of a general point, the defendant had embraced in his point the substance of the evidence.

The general rule requiring all wills to be in writing, is intended to be as nearly universal as is possible, and the exception in favor of nuncupative wills must be very strictly administered. It is a partial substitute for a written will in cases of necessity. A necessity not arising from ignorance; for, besides the difficulty of proving or disproving ignorance, it is plain that the form of the exception is expected to be known, in order to be followed. A necessity *not* arising from mere carelessness, for that would be an abuse of the term. The necessity intended is that which arises when the testator is surprised by approaching death, and has not time to make the form of disposition intended by the general rule of law. Such was not this case. The decedent knew her end was approaching for some days before the making of the alleged will, and made no use of her time, though advised on the subject. And when she did declare her wishes, it seems that she was rather unwilling to be troubled about a will, or ignorant that one was necessary, than unable to make it. We think, therefore, that the Court ought to have affirmed the defendant's fourth point.

We may be allowed here to endeavor to correct a matter of practice.

If there were a judgment for the plaintiff in this case, the record would give no valuable information as to the question decided. Every record ought to be complete in itself, and in framing an issue to try the validity of a nuncupative will, the will itself ought to be set out at length, and then a verdict and judgment sustaining it is conclusive of its validity and of its contents. Where the issue is raised by a declaration and plea, the will ought to be set out in the declaration.

Judgment reversed and a new trial awarded.