The opinion of the Court was delivered by
Tilghman C. J.
On the trial of this cause in the Court below, the defendants’ counsel took eight bills of exceptions to evidence, and also an exception to the charge of .the Court. Each of these shall be considered in the order in which they stand on. the record.
The 1st exception was, to the challenge of a juror, claimed by the plaintiffs’ counsel, and admitted by the Court. The Act of 4th April, 1809, (5 Sm. L. 59,) gives to each party, in all civil suits, the right of challenging two jurors peremptorily, but does not direct the mode, in which the challenge shall be made. It has been the general practice for the plaintiff to challenge one juror from the whole pannél first., It was so done in the present case ; after which, the defendant challenged one.' It has also been the practice in this, and other judicial districts, to summon a talesman in the place, of each juror that has been challenged, immediately after the challenge. So also it was done in this case. After the defendant had made his first challenge, the right , of making 3. second challenge came to the plaintiff; and it is stated on the record, that he waved a second challenge. Upon this the defendant made a second challenge, and a juror having been summoned in the room.of the one so challenged, the plaintiff claimed the right of challenging him, and the Court permitted the challenge. In this, I think there was error. If the plaintiff waved the second challenge, when it came to his turn to make it, he should not be permitted to resume it again. It would give him an unfair advantage. The mode of alternate challenge, having been commenced, must be preserved with uniformity to the end. The plaintiff had á right' to wave his challenge, but having waved it, he must abide by it.
■ The second exception was to the admission of James Ash, as a witness. He is one of the plaintiffs on the record, but, *124 previous to his admission, he had executed a release to the heirs of James Craig, of all claims to compensation by way commission, and. had paid to the prothonotary of the Court,.a sum of money admitted to be sufficient for the payment of all costs accrued or which may accrue in this suit, t0 be applied to the payment of these costs, let the verdmt be as Jt may . so that jn evert7 event the whole costs were paid by the said Ash, and he had agreed that in no event was any part of the money to be refunded. Thus he stood completely divested of all interest, actual or contingent. Thus circumstanced, I have no doubt that he was a competent.witness. He was a bare trustee, at the commencement of the action, and there is no suggestion that he was in any danger of being involved in a devastavit. If any thing of that kind had appeared, he would have been interested, It was decided by this Court, in the case of Steele v. The Phœnix Insurance Company, (3 Binn. 306,) that the bare circumstance of being a plaintiff on record, did not render a man incompetent, provided he was free from interest when he was offered as a witness. This principle has been ever since acted upon in all the Courts, and may be considered as the law of the land. I speak of it as a general principle, to which there may be exceptions, when witnesses are offered under circumstances of strong suspicion. To attempt now, an examination of all possible exceptions is unnecessary, and would be dangerous. I only wish it to be understood, that there may be cases in which a witness may be offered, under circumstances sufficient to exclude him, although he cannot be proved to be absolutely interested. But in the present instance, it does not appear that Mr. Ash ever had any interest, except what might arise from his commission as an administrator, and from his being liable to the costs of suit; and having completely discharged himself from both these, and standing under no suspicion whatever of improper conduct, in order to make himself a witness, he was competent upon principles well established. In his admission, therefore, there was no error.
The third exception has been abandoned by the plaintiffs in error.
The 4th exception was to the admission of James Craig’s bank book, (containing his account with the bank of Tennsyl *125 sania,) and a check drawn by James Craig on the bank of Pennsylvania, dated 20th May, 1793, for 1979 dollars, payable to James Patton, or beaper. To decide this exception, it will be necessary to take into' view ' sortie of the evidence which had been given, before the bank book and check were offered. ‘ It had been proved by the oath of James Ash, that at' the earnest solicitation of John Patton, and for his accom- , . ... , , , . , , , , ' modation, a note had been drawn by the said Ash, payable to Patton for 2000 dollars, dated May 13th, 1793. - This note was indorsed by Patton and Craig, and discounted by the bank of Pennsylvania. Patton received the money, but as Craig was the last indorsor, and consequently the.money was placed to his credit in the bank, it was necessapy that he should draw a check, in order to enable Patton to receive the money. Ash proved also, that he, being liable to the bank, as drawer of the note for 2000 dollars^ received full satisfaction from Craig, so. that in fact, Craig’-lent the money to Patton. It was then proved by Ash, that the book was the bank book of Craig, that the signature of Craig to the check, was his hand writing, that the check bore .the mark of having been cancelled in the bank of- Pennsylvania, and both book and check were found by him,, after Craig's death, among his papers. It is evident then, at the first glance, that' not only were this book and check in direct corroboration of Ash's testimony, but they were so connected with it as to form a link which ought not to have been broken; and had they not been produced, the defendants might well have remarked, that Ash’s testimony was suspicious, as it stood unsupported by -the bank'book and check, which were in his power, and which would either verify or disprove- what he had sworn. A naked check, payable to one or bearer, is not evidence per se of payment to the person whose name is inserted—because the bank pays to the bearer, whoever he may be. It is necessary therefore to prove, that the person to whom payable, received the money at the bank. And even then, it may be expected; that in order to charge such person with a debt,some evidence should be giving, to explain the consideration^ of the check; for it may have been given in payment of a debt due from the drawer. In the present case however, after the introductory testimony of James Ash, the book and check, would undoubtedly have been evidence, provided the usual *126 proof had been made, of the truth of the entries in the bank book. These entries are always made, by one of the clerks of the bank. It is necessary therefore, that they should be • ' ' proved by the' clerk who" made them, or in cáse of his death his hand writing should be proved. It is'not-enough that this book, was the bank book of Craig. He might have made. entries in it. himself, or procured them to be made by some Dther person, not a clerk of the bank; and such entries would , , _ • . „ not be evidence, in ancient transactions, great allowance will be made for the difficulty of proof. But it should be shewn, that such difficulty exists. The plaintiff took no step whatever to prove the .entries in Craig’s book.' For any thing - that .we know., the clerk may be living, or, if dead, his writing may. be well known. ’Iii all probability it is well known. I have often seen bank books given in evidence,- but never without the. entries .being verified by the oath of the clerk who made them,- unless such proof( was dispensed with by the adverse party. I am therefore of opinion, that for want of such proof, the bank book of James Craig was not evidence. Neither do I think the check was evidence, because .there was not sufficient proof that Patton received the money from the bank. James Ash’s testimony was general-; that Patton got the money, and that he could not have received it without Craig’s check; but he did not pretend to say, that within his own knowledge, the check was paid to. Patton, or that it was paid to any body. He found it, cancelled, among Craig’s papers, and therefore presumed it was paid. But, with the bank book, the check would have been evidence, because it Would then have appeared, that the check was paid by the bank, and connected with the other circumstances proved by Ash, it should, have gone to the jury,'who might well have inferred that the payment was to Patton.
The 5, 6, and 7th, exceptions depend on-one principle and may be considered , together. The Plaintiffs offered in evidence, the .record of a judgment in the Supreme Court, the 1-lth December, 1797, for James Seagrave against John Patton, Afames Craig, and three other persons, for the sum of 4026 dollars, 87á cents, and also offered to prove' that Craig paid Patton’s proportion of this judgment. They also offered in evidence, a note for 350 pounds, from Patton and Craig, to a certain John Wright Stanly, and offered to prove *127 that Craig paid Patton’s half of this note. The evidence was admitted, although the defendants objected to it, alleging that their payments were in the course of partnership transactions, and therefore could not be recoverable in the present action, or in any othér, than an action of.account render. Had it clearly appeared, that unsettled partnership transactions were involved in these payments, the objection might have been good. But; it did not clearly appear so, and whether or no it was a partnership transaction, the jury might-judge. It is riot to be supposed, that the defendants were injured by the admission of this evidence, because the •Court gave it in positive charge to the jury, that if the payments related to a partnership account, the plaintiffs could not recover on them, in this action, unless the partnership accounts had been previously settled, or Patton had made an express promise to pay. Thus qualified, I perceive no error in the admission of the evidence.
The 8th exception, was to the admission of a. number of letters from, Patton to Craig, and' to Ash, all admitted to be the hand writing of Patton, and the copy of a letter from Ash to Patton. These letters were offered all together, and the defendant objected to all and each of them. There is not a particle of doubt on this exception. The -letters of Patton were clearly evidence, and the.copy of Ash’s letter, as clearly not evidence. For although Ash proved, that it was a true copy of the original, which was directed to John Patton, and put into the post office, yet it is against principle, to admit the copy of any private paper, without accouiitirig for the non production of the original. A copy, in its nature, is less satisfactory evidence than the original.. And when.the original, is in the hands of the adverse party, notice should be given to him to produce it. In this case notice was not given, and therefore the copy was not evidence.
The last exception is to the charge of the Court, on the subject of the Act of Limitations. The transactions on which the plaintiffs’ claim was founded, took place more than six. years before the co'mmencement of the action. To take the case out of the Act, the plaintiffs relied on several letters of Mr. Patton, but more particularly on one to James Ash, dated the 16th of November, 1802. And the opinion of the Court was expressly asked, by the defendants’ counsel on *128 this point. The Court’s answer to this question, (the fifth question proposed by the defendants’ counsel,) which is to be considered as part of the charge, is in the following terms., if To take the case out of the Statute of Limitations, there must be an acknowledgment of a subsisting debt, or a promise to pay, within six years before the action brought, and the acknowledgment and promise to pay must have a direct reference to the demand now made by the plaintiffs, which fact the jury must determine from the evidence in this cause.” The defendants* objection to this opinion, is, “ that Patton’s letter did not refer with certainty to the account, which is the subject of this suit 5 and the Judge should have told the jury, that unless the letter did so refer, it could have no effect on the Statute of Limitations, or rather he should have told them, that this letter had no effect on the Statute.”
Let us examine this letter then, and see what force there is in the objection. It appears, from the letter, that Patton had received from Ash, a copy of Craig’s account against him ; and also that he had made out from his own books, his own account against Craig, but had lost them both. He therefore requests Ash to have another copy of Craig’s account made out and sent to him, and informs him, that as soon as he has received his books, which he expected to do soon, (they were then at Harrisburg, on the way from Philadelphia to Patton’s house in Centre county,) he would have his own account made put again ; the letter concludes with saying, “I will write you again some time hence, and inform you when I will again return to the city, and put a close to this affair in the best manner I can.”
Now, we see that in this letter, Patton expressly acknowledged an unsettled account with Craig’s estate, and an intention to close it. By closing it, I understand paying it, if the balance should be against him. It would have been most extraordinary indeed, if the Court had directed the jury that this letter could have no effect on the Statute of Limitations. If the Judge had passed any opinion upon it, he might truly have said, that it- was quite sufficient, to authorise the jury to presume a new promise within six years, unless they were satisfied, that it had no reference to the affairs, on which the action is founded. But it ought not to have been taken from the jury entirely, because there was a reference to accounts, *129 of which the jury, and they only had a right to judge. In my opinion, therefore, the charge was on this point, more favourable to the defendants than their case deserved ; but of that, they have no right to complain.
On the whole, I am of opinion that the judgment should be , , ^ • i j j reversed, and a new trial ordered. ■
Duncan J. gave no opinion, having been counsel for the plaintiff in error.
Judgment reversed and a venire facias de novo awarded.