[PHILADELPHIA, MARCH 30, 1832.]

## KIMBALL who survived TYSON *against* KIMBALL.

### APPEAL.

*A.* & *B.* brought an action of assumpsit against *C.* in which they declared upon an alleged agreement, that the said *C.* in consideration that they would enter satisfaction on two judgments which they held against him as administrators of *D.* for the purpose of enabling him to make a perfect title to one *E.* for a lot of land which C. had sold to him and which was bound by those judgments, promised to give to *A.* and *B.* a new judgment for the aggregate amount of the two judgments on which they at his request had agreed to enter satisfaction; averring, that confiding in the said promise, they did enter satisfaction &c. Before the trial of the cause took place, *A.* died and his son was offered as a witness to prove the agreement after having executed to a third person, an assignment of all his interest in the suit and the money for the recovery of which it was brought, and offered to pay into court all the costs which had accrued and a sum sufficient to cover all which might thereafter accrue; *Held* that he was incompetent on the ground of interest, notwithstanding the assignment &c. because in the event of the plaintiffs failure to recover · in this suit, the estate of the witness's father *A.*, of which he was entitled to a distributive share, would be liable to make good to those interested in the estate of *D.* of which he was one of the administrators, his proportion of the amount of the two judgment upon which satisfaction had been entered.

APPEAL from the decision of the Chief Justice holding a circuit court in *Montgomery* county in *March*, 1832.

After argument by *Rawle* jr. for the appellant, and by *Kittera* for the appellees, the opinion of the court, in which the case is fully stated, was delivered by

KENNEDY J.—This was an action of assumpsit brought by *Jonathan Kimball* and *Peter Tyson*, (who died after the commencement, and before trial of the suit,) to recover the amount of two judgments which had been entered in the court of Common Pleas of *Montgomery* county, in favour of *Jonathan Kimball* and *Peter Tyson*, the plaintiffs in this action, against *Josiah Kimball* the defendant, upon judgment bonds given by him to the plaintiffs, each for the sum of eight thousand five hundred and fifty-four dollars and twenty eight cents, conditioned for the payment of one half that sum.

The declaration set forth, that the defendant after having sold ten acres of land, part of his real estate, which was bound by the judgments, to a certain *Jonathan Shaw*, and having agreed to make *Shaw* a title for the ten acres, clear of incumbrances, applied to the plaintiffs in the judgments and reqested them to enter satisfaction upon the judgments, that he might be enabled to comply with his contract, in making a title to *Shaw*, and at the same time promised the plaintiffs, that if they would enter satisfaction upon the judgments, he would give a new judgment to the plaintiffs in the court of Common Pleas of *Montgomery* county, for the aggregate

(Kimball v. Kimball.)

amount of those upon which he requested satisfaction to be entered: That the plaintiffs, confiding in the promise of the defendant, and at his request, did enter satisfaction upon the judgments; but the defendant afterwards refused to give or to confess a new judgment to them, to secure the payment of the amount of money for which the satisfied judgments had been entered, and which was justly due upon them at the time satisfaction was entered, according to his promise and undertaking in this behalf.

Upon the trial of the cause, it appeared that the plaintiffs, *Jonathan Kimball*, and *Peter Tyson* who was married to the sister of *Jonathan Kimball*, had been the ad'rs of *William Kimball* deceased, the father of *Jonathan Kimball* the plaintiff, and of *Josiah Kimball* the defendant and that the bonds upon which the two judgment were entered up in their favour, against the defendant *Josiah Kimball* had been given to them, partly for their own use, and partly in trust for the use and benefit of the other children of the said *William Kimball;* and that the satisfaction entered upon the judgments had been done without the consent, and without consulting these other children. It did not appear that these other children had been paid or satisfied, in any way, for the amount of their interest in these judgments by *Jonathan Kimball* and *Peter Tyson*, or either of them. On the part of the plaintiff, *William Tyson*, one of the children of *Peter Tyson*, who was one of the plaintiffs in the judgments, and one of the plaintiffs in this action, at its commencement, and for sometime afterwards, until he died intestate, leaving an estate which passed and descended to his children, was offered as a witness after having executed an assignment under his hand and seal, to a certain *John Keck*, in consideration of ten dollars paid to him by *Keck*, of all his right, claim, interest and demand in the monies for the recovery of which this suit was brought, as also all his right and interest in the same; and the plaintiffs offering at the same time to pay into court all the costs which had accrued in the suit, and a sum sufficient to pay and cover all that might thereafter accrue. The defendant objected to the competency of *William Tyson*, so offered as a witness, on the score of his being interested in sustaining and promoting a recovery in this suit. The Chief Justice thought so, and refused to admit him. From this decision an appeal has been taken to this court.

The decision of the Circuit Court upon this point, we think was right. *William Tyson*, who was offered as a witness on behalf of the plaintiffs, had merely transferred and assigned such proportion of the money, which might be recovered in this action, as would be coming to him as one of the children and heirs of his father; but it is manifest that he was interested in a recovery being had beyond this; for he could have no claim to the money or to any portion of it, recovered in this suit, until all the other children of *William Kimball* deceased, beside *Jonathan Kimball*, were satisfied and paid their respective proportions of it; and in case of a failure to recover in this action, he would not only lose his claim to that portion of the surplus

(Kimball *v.* Kimball.)

which might have been coming to him as one of the children of *Peter Tyson,* his father, after satisfying *Jonathan Kimball* and the other children of *William Kimball* deceased, but his father *Peter Tyson's* estate would be liable, in conjunction with *Jonathan Kimball,* to make good to the other children of *William Kimball* deceased, their respect-ive proportions of the amount of the two judgments in which they stand as trustees for these other children, and for which they had made themselves chargeable, by having entered satisfaction upon the judgments and thereby destroyed the security which they had for the payment of this trust money, without having received it, and without the consent of the *cestui qui trusts.* The manner in which *Jonathan Kimball* and *Peter Tyson* have alleged that they entered satisfaction upon these judgments, was clearly a breach of their trust, and such an act as made them liable to pay out of their own pockets, what-ever of the amount thereof should be thereby lost, and was held in trust; so that *Peter Tyson's* estate would and must be reserved just so much as his proportion, that is, one half of whatever the trust money was equal to, in case of a failure to recover in this action, which must necessarily affect and reduce the sum that would be coming to *William Tyson* as his purpart of his father's estate, ex-clusive of what might be added to it by a recovery here, and the assignment which he had made was only of his interest in this action and his right to claim any portion of the money which might be re-covered in it, retaining his interest in the other estate of his father. *William Tyson,* the person offered by the plaintiff as a witness, was thus directly interested in promoting a recovery in this action, not-withstanding his assignment, because it would go in relief of, and prevent a diminution of the residue of his father's estate, which otherwise must inevitably take place, and of course diminish his distributive share of it. This case has no analogy to the case of a creditor, who is a competent witness, generally, to prove a debt due to his debtor, notwithstanding the recovery of it may enable the debtor the better to pay the witness his debt, because every debtor is presumed to be of sufficient ability to pay his debts, independant of the debt or claim in controversy, until the contrary shall be shown; and therefore the creditor cannot be supposed to have any immediate interest in his debtor's recovery, as he will get his debt at all events.

Neither has the case of *Patton* v. *Ash,* 7 *Serg. & Rawle,* 116, which has been referred to, and mentioned also by the counsel for the ap-pellant; or if it has, it is rather against him, for the court seem to insinuate that if it had been suggested there that the administrator, who was a party on the record to the suit, had committed a *devastavit* he would not have been a competent witness, although he had released all claims to any possible benefit which he might derive from a recov-ery in it. Now it appears in the case before us, that a *devastavit* was committed which must *diminish* the amount of the estate out of which the person offered as a witness claims to have his equal distri-butive share, unless there shall be a recovery in this action.

(Kimball *v.* Kimball.)

The case of *Baynton* v. *Turner,* 13 *Mass. Rep.* 391, has also been quoted and relied on by the appellant's counsel, where a son and one of the heirs of the plaintiff's intestate, after having assigned and released to the plaintiff all his proportion and benefit of the money which might be recovered in the suit, and having received from the plaintiff a deed executed by her to him, indemnifying him from all costs and charges to which he might be liable in consequence of the suit, was offered by the plaintiff as a witness upon her part, and after objection by the defendant was held to be competent by the court. We also think that that case is very different from the one now before this court, because it did not appear in that case as it does in this, that a recovery by the plaintiff would go to relieve the estate of the intestate in which the witness was still interested, from a charge that otherwise must inevitably fall upon it and reduce his share.

Judgment of the Circuit Court affirmed.