MOTT vs. SMALL.

A contract entered into *guaranteeing* the payment of a note is not void on the ground of *maintenance*, but may be enforced in an action at law, although entered into for the express purpose of inducing the holder of the note to *release* a former holder who had transferred the note and guaranteed its payment, so as to render him a competent witness in an action for the recovery of the note.

Such former holder, on being *released* becomes a competent witness, although the substituted security was obtained by his procurement; the objection to him as a witness affects his *credibility*, but not his *competency*.

*It seems* that by the Revised Statutes, the offence of *unlawful maintenance* is abolished, except as to buying and selling *pretended titles to. land*, and *falsely moving and maintaining suits.*

THIS was an action of *covenant*, tried at the Herkimer circuit, in November, 1837, before the Hon. JOHN WILLARD, one of the circuit judges.

George H. Feeter having transferred to the plaintiff a promissory note made by John D. Petrie and Adam Petrie, for the sum of $313.23, payable with interest, bearing date .28th January, 1833, and having *guaranteed* the payment thereof, the plaintiff commenced a suit against John D. Petrie (the other maker having died) for the recovery of the note. When the cause was ready for trial, it was found necessary in order to resist a. defence of payment set up by the defendant, that *Feeter* should be *released* from his liability as *guarantor*, so that he might be called as a witness in support of the action. Feeter thereupon procured the defendant to execute an instrument under seal, covenanting and agreeing with the plaintiff to pay to him the amount of the note made by the Petries with the interest thereof, and also the costs of the suit against John D. Petrie (including the defendant's costs, if the plaintiff should become liable therefor,) and of all suits in relation to the note in case the plaintiff should fail to recover said amount in the suit then prosecuted against John D. Petrie, or should be unable to collect the same in case he should obtain judgment therefor, provided that the plaintiff should prosecute the cause with due diligence. This covenant

Mott *v.* Small.

was stated to have been entered into in consideration of one dollar paid by the plaintiff to the covenantor, and also in consideration that the plaintiff, at the request of the covenantor, had *released* and *discharged* Feeter from his *guaranty* of the note made by the Petries.  On this covenant the plaintiff declared, averring that he diligently prosecuted the suit, but that he failed to recover ; a verdict having been found for the defendant, on which judgment was subsequently rendered for the defendant with the costs of the defence.  He then assigned as breaches of the covenant, the non-payment of the amount of the note, the cost of the suit, and other costs incurred by reason of the filing of a bill in chancery by John D. Petrie in relation to the note.  The defendant pleaded *non est factum* and various other pleas.  On the trial of the cause, the execution of the covenant declared upon was proved, and it was also proved, that on its delivery to the counsel of the plaintiff, a *release* was delivered to Feeter from his liability under the *guaranty* executed by him, and that Feeter was sworn as a witness on the trial of the cause of the plaintiff against Petrie. After the testimony was closed, the defendant insisted that the *instrument declared upon was void for maintenance ;* which objection, together with several others, was overruled by the circuit judge, who directed the jury to find for the plaintiff.  The jury accordingly found a verdict for the plaintiff with $783.68 damages.  The defendant excepted to the decisions of the judge and procured a bill of exceptions to be sealed.  At the last *May* term, the plaintiff moved for judgment on the ground of the *frivolousness* of the bill of exceptions, when all the exceptions were overruled except that above noted, in respect to which the court directed an argument.  The cause was accordingly argued upon that point at the last *July* term, by

*J. A. Spencer,* for the defendant.

*C. Tracy & H. Denio,* for the plaintiff.

This case was kept under advisement until this term, when the following opinion was delivered :

*By the Court,* Cowen, J.  Several grounds are taken in the bill of exceptions, which were all overruled as frivolous at the May term, except the single one that the covenant was given for unlawful maintenance.  That objection certainly would not have occurred to us, and I think we should have overruled it also, without argument, had it not been for what was said by Bayley, J. in *Bell* v. *Smith,* 7 *Dowl. & Ryl.* 846, 854; 5 *Barn. & Cress.* 188, *S. C. and S. P.*

The case of *Bell* v. *Smith* was an action against Bell for a total loss on a policy of insurance on goods, effected to and in the names of *Smith* and others ; the *interest* being solely in *Arnet, Gibb, Robertson and Wimble,* and the policy being effected on their account.  The action was commenced and tried in the C. B. where *Arnet* was received as a witness for the plaintiffs and a bill of exceptions taken.  To remove his interest, *Arnet* had, before suit brought, released all his interest to the plaintiffs. The court of C. B., notwithstanding, had ordered *Arnet* and his co-assured to indemnify the plaintiffs against the costs ; whereupon the plaintiffs, and the co-assured, and *Lachlan & Robertson* entered into an indenture of three parts, reciting the interest of the parties, the commencement of the suit, its object, the order of indemnity, &c.  Then, by the same indenture, the assured in consideration of 10*s.* assigned all their right to *Lachlan & Robertson,* who covenanted to indemnify the plaintiffs, and these in consideration of 10*s.,* released all claim for costs against the assured.  *Arnet* was then examined on his *voir dire,* and admitted that the plaintiffs were agents for him and his co-assured in effecting the policy.  A verdict and judgment passing for the plaintiffs, on his testimony with other evidence in the cause, and error being brought to the K. B. by Bell, the sole question was whether *Arnet* remained interested notwithstanding his own release and the indenture.  The K. B. were unanimous in reversing the judgment, on the ground that he, with his co-assured, were still liable to pay the costs to the attorney on record of the plaintiffs, the suit evidently having been brought under their express or implied authority.  In the course of Parke's argu-

ment, by which he was endeavoring to show that *Arnet* had been freed from all interest, Bayley, J. said there was another view in which the point might be considered. " Here is a man who has a policy of insurance on which he knows he cannot recover in his own name, and cannot recover at all unless he himself becomes a witness. He therefore sells his interest in the policy to some body else, and gets a price for it, which he could not otherwise obtain, and then tenders his evidence in order to support the policy. Is not that something like champerty?" When he came finally to deliver his opinion, after concurring in, and enforcing the ground taken by Abbott, C. J., that *Arnet* was incompetent on account of his liability to the attorney on record, he added : " But I think it is impossible to consider him a competent witness for a *much stronger reason*. The action was originally brought at the instance of *Arnet* and his co-assured. It is then found that there is not sufficient evidence to support the action, and thereupon the parties resort to a description of machinery which militates against the doctrine of the assignment of choses in action, and is calculated to produce all the mischiefs which the doctrine of maintenance and champerty is calculated to produce. The first thing done is, that without consideration as far as we can see, *Arnet* releases to the nominal plaintiffs all his interest in the policy of insurance which is the subject of the action. Is that found sufficient? Finding that it is not, and feeling that the action could not be maintained, unless he could be considered in the light of a disinterested person unconnected with the transaction, the expedient is then resorted to of conveying to *Lachlan & Roberston* all his interest in the policy, for the valuable consideration of 10*s.* Now if a case of champerty or maintenance were put, can a stronger one than this be suggested? Here is an action brought by several persons originally interested, and as it cannot be sustained for want of evidence, one of those persons who would be considered as an interested witness, in the first place releases all his claim to the persons who are the nominal plaintiffs, and afterwards assigns his interest to his copartners for a mere nominal consideration. Upon what principle is the

doctrine of maintenance considered as illegal ? Because, as laid down in all the books, it encourages suits, and induces parties to go on with actions which could not otherwise have been supported. Now this was the very object of the machinery in question ; for these deeds amount to an acknowledgment, that without the testimony of *Arnet*, the action could not be maintained, and it is impossible for any person to shut his eyes against the conviction, that this scheme was merely the result of machinery and contrivance. On these grounds, it appears to me, that it would work great mischief, if we were to hold that *Arnet* is a competent witness. Mr. Parke says, ' let these parties be punished, if this be the result of machinery and contrivance ;' but it seems to me that one mode of punishment is to say, that a verdict obtained by such means shall not be of any avail." Holroyd, J. concurred in this reasoning ; and Littledale, J. thought *Arnet* was interested as being liable to the defendant for costs.

On this case being mentioned at May term, we were desirous that search should be made in order to see whether the doctrine thus advanced had been at any time acted upon by the English courts ; but counsel have failed to produce any case in which that has been done. On the contrary, it is impossible not to see that, taken in its full extent, the doctrine would impugn the principle on which the English courts themselves allow the interest of witnesses to be removed. The defendant's bail is an incompetent witness for him ; yet ever since 1653, *Anon.* *Styles*, 385, it has been held that other bail may be received in his place, and he be thus made competent. This may be equally condemned as an expedient to maintain a defence. It is doubtless maintenance ; but it is *lawful maintenance*, as is said of giving gold or silver to a poor man, to maintain his plea, and the like, which is called *maintenance justifiable*, in respect to the motive. *Vin. Abr. Maintenance*, (Q) *pl.* 1, *and cases there cited.* The becoming bail, and suing for indemnity were once, it seems, questioned as unlawful maintenance, but that was denied. *Id. Maintenance*, (E) *pl.* 1. Giving bail being lawful in itself, the case in *Styles*, and the constant prac-

tice since that time, *Collet* v. *Jennis, Rep. Temp. Hardw.* 124, *A. D.* 1735, *and see* 2 *Stark. Ev.* 86, *Am. ed.* 1837, *and other English books on evidence,* shew that it is not made unlawful because the object is to let in other bail as a witness in the cause. In short, we may collect broadly, I think, from this practice that any arrangement which would be lawful in itself, is not made unlawful because the object is to maintain a suit or defence by letting in a witness. The object is not to violate the truth, nor shall such a purpose be presumed; but it is to take away the interest of the witness in order that he may be sworn and speak the truth. In the case at bar, no one will deny that the defendant might lawfully become a guarantor of the note to the plaintiff; and shall it be said that because it was to release and let in the testimony of a previous guarantor to maintain the suit, it was therefore unlawful? Such was the object disclosed by the testimony. It is said the claim to be maintained was false; but it is never made a question on substituting bail whether the defence be well or ill founded. The party merely shows by his affidavit that, according to the advice of counsel, the mainpernor is material to him, as a witness; and though the defence may fail, the new mainpernor is holden to all the consequences. Indeed, the application supposes that the defence may fail. Otherwise, why exact new bail? It is said that bail is for the benefit of the plaintiff. True it is in itself so; but not where bail is substituted in order to let in a witness against the plaintiff. There the very object is to maintain the defence against him. It cannot be that what the court will itself sanction of record is to be deemed illegal when done *in pais.* It is but a difference of form. Accordingly, in *Brandigee* v. *Hale,* 13 *Johns. R.* 125, the attorney for the plaintiff being interested as having commenced the suit for a non-resident without procuring a bond for the costs pursuant to a rule of this court, a bond with sufficient sureties was offered to the defendant at the trial, conditioned to pay the costs. He refused to accept it; and yet this court held it to be a discharge of the attorney's interest, on the bond being filed with the clerk. The suit was

thus maintained against the defendant by a voluntary bond *in pais* with the assent of the court. It is now the constant practice for a judge at the circuit to take substituted bail, or allow the deposit of a sum of money, and strike the name of the former mainpernors out of the bail piece, on a bare suggestion of counsel that they are material witnesses. *Pearcy* v. *Heming*, 5 Carr. & *Payne*, 503. *Bailey* v. *Hole*, 3 Carr. & *Payne*, 560. 1 Mood. & *Malk.* 589, S. C. *Leggett* v. *Boyd*, 3 Wendell, 376. Tompkins v. *Curtis*, 3 *Cowen's* R. 251. *M'Cullock* v. *Tyson*, 2 Hawks, 336. *Irwin* v. *Cargell*, 8 Johns. R. 407. *Stimmel* v. *Underwood*, 3 Gill & Johns. 282. *Butler* v. *De Hart*, 1 Mart. Lou. R. N. S. 184, 5, 6.

I pass over the practice of restoring competency by release as too common to need a support by cases. That *Arnet* had released his interest to the plaintiffs below in *Bell* v. *Smith* would not, so far as it went, have been questioned as a mode perfectly lawful. And yet this is many times to give up an important claim by the witness, as a residuary legatee or otherwise, for a nominal consideration, and the direct purpose of maintaining the suit. He is at the time a *cestui que trust* a party suing, as *Arnet* was, through his trustee; yet no one would question his right to come in on parting with his interest. What is the difference in principle between parting with an interest in that form and making an assignment as *Arnet* did? That very mode was resorted to in *Soulden* v. *Van Rensselaer*, 9 Wendell, 293, by the owner of the chose in action under whose direction the suit was brought, after he had been released by the attorney for the plaintiff on record. That would have been the precise case of *Arnet*, had his attorney released him. He had been discharged from his liability to indemnify the nominal plaintiffs, and it was not much insisted that he stood liable to the defendant for his costs. That was deemed a more serious difficulty in *Soulden* v. *Van Rensselaer*. The court got over it on the reason assigned by Mr. Justice Nelson, that *Smith*, another *cestui que trust*, to whom the witness had assigned, was liable in the first instance; and that the court would subject the witness only in

the event of Smith's proving insolvent. The liability was, therefore, contingent. The assignment of a chose in action is perfectly innocent in itself, as innocent as giving bail; nor can we perceive how it is to be made obnoxious any more than giving bail, to the imputation of unlawful maintenance because it has in view the restoration of competency. If the purpose be nothing more, it is rather laudable, as subserving the ends of justice by furnishing additional means for disclosing the truth. We do not perceive, then, why the machinery resorted to in *Bell* v. *Smith,* which in its parts would be perfectly lawful, could be deemed less so when presented in a state of combination. That case is easily sustainable on the assumption of the judges that *Arnet* was still liable with his co-assured to the plaintiffs' attorney; and it appears to us that by adopting the ground taken by Mr. Justice Bayley we should be overruling almost every case which allows the restoration of competency by the voluntary act of a third person. If the objection in that case resided in the fact that *Lachlan & Robertson* were to receive a consideration for joining in the arrangement to restore the competency of the witness, and so the act was of the nature of champerty, then the objection does not apply to the case at bar. The defendant, for aught that appears, was a volunteer in giving the covenant. But such an objection, if true, would be incompatible with that class of cases where a man interested in a fund has been allowed to receive a sum of money, and release or assign his interest with a view to render him competent as a witness to increase the fund. A stockholder may become a witness for a bank on assigning his interest. *Bank of Utica* v. *Smalley,* 2 *Cowen,* 770. See also *Stall* v. *Catskill Bank,* 18 *Wendell,* 466. Surely it can be no objection that he assigns for a full price, or even more than the stock is worth. Such a circumstance would rather be evidence in favor of the assignment being *bona fide.*

In the case of *Lake* v. *Auborn,* 17 *Wendell,* 18, a witness had retained the attorney for the plaintiff, and owned the note on which the suit was brought, and an hour or two before he was sworn as a witness, and for the purpose of removing his interest

he assigned the note to one Smith, who gave him a bond of indemnity against all costs and charges in the suit. This court held the witness to be competent for the plaintiff, inasmuch as his interest was neutralized by the bond of indemnity. And see *Chaffee* v. *Thomas*, 7 *Cowen*, 358. The case of *Lake* v. *Auborn* was certainly open to every objection which can be raised in the principal case, and more, on the score of maintenance. Yet that was neither mentioned by counsel nor thought of by the court. There was a valuable consideration for the indemnity, an assignment of a chose in action. Indeed the remarks of Mr. Justice Bayley, when applied to exclude the assignment of choses in action, releases, indemnities and other contrivances which the law has introduced to restore the competency of witnesses, labor against an irresistible line of authority. The law is familiar with expedients for letting in the witness, and substituting objections of credibility for those of competency, and it allows, for that purpose, full effect to the ordinary machinery of legal transactions. A guaranty in the possession of counsel, delivered by him to the guarantor for the purpose of being destroyed, and with design to render him competent, shall have that effect. *The Merchants' Bank* v. *Spicer*, 6 *Wendell*, 443. A release by one of two jointly interested in a claim either for a tort or on contract, will take away the interest of the releasee for the same purpose. *Whitamore* v. *Waterhouse*, 4 *Carr. & Payne*, 383. *Hockless* v. *Mitchell*, 4 *Esp. R.* 86. *Bulkley* v. *Dayton*, 14 *Johns. R.* 387. A legatee having assigned his interest to another who gave a bond to pay the consideration, was held competent to prove the will, *M'Ilroy* v. *M'Ilroy*, 1 *Rawle*, 433 ; and in Pennsylvania, even a party plaintiff may be made a witness on assigning, the assignee paying the costs ; and in one case this was held of a claim for a trespass *de bonis asportatis*. *North* v. *Turner*, 9 *Serg. & Rawle*, 244. Many like cases could be cited. *Vide Bagley* v. *Osborn*, 2 *Wendell*, 527.

The great principle on which the doctrine of illegal maintenance rests, is, that by allowing the power to let in third persons as parties or privies to the suit, strong men may be introduced

Mott v. Small.

who will exercise an undue influence over the litigation. But this does not seem to have been at all regarded where the object was to restore competency. The introduction of new bail, and the assignment of an interest, equally open the door to such a consequence. Every method which can be imagined is also obnoxious to the objection that it is colorable, collusive or fraudulent; but courts must satisfy themselves by the best means in their power, that the mode resorted to for the transfer, extinguishment or balancing of interest is adopted in good faith ; or that, at least, the object is technically effected. *Utica Ins. Co.* v. *Cadwell*, 3 *Wendell*, 296. And see what was said by Tilghman, C. J. and Yeates, J. in *Steele* v. *The Phœnix Ins. Co.*, 3 *Binn.* 313, 316, 317.

This view of the question renders it unnecessary to pronounce definitely upon the proposition strenuously contended for in argument, that, besides champerty in contracts concerning pretended titles, and a conspiracy to move and maintain suits, retained by the Revised Statutes, 2 *R. S.* 576, § 6, *and id.* 577, § 8, *sub.* 3, *2d ed.*, we have no such thing as maintenance remaining in our law. The revisers, on introducing the new statute certainly proposed the abolition of the law of maintenance, with the exceptions mentioned, 3 *R. S. 2d ed.* 828, *note to* § 8, 9 ; and in furtherance of that object the statute of 1801, 1 *R. L. of* 1813, 172 *to* 174, which embodied the old English law of maintenance, is expressly repealed. 3 *R. S.* 151, *2d ed. pl.* 62. The policy of the old law, so far as its main principle was concerned—*danger* from the influence of strong men—had already been much questioned by several of our judges, as inapplicable to our social condition. *Kent, Ch. in Thallhimer* v. *Brinckerhoff*, 3 *Cowen*, 644. *Marcy, J. in Campbell* v. *Jones*, 4 *Wendell*, 310. It is evident from their remarks, that the ancient provisions both of the common and statute law were regarded as in great part obsolete in this state ; and, in the argument of a late case in England, with all the watchful jealousy of the feudal age, its reported cases and statutes still claiming ascendency in the tomes of Westminister Hall, unrepealed and unimpaired, an eminent serjeant (Mr. Wilde)

was listened to with attention by the common pleas, in an argument based upon similar strictures of English judges, with the legal writers and precedents of the realm, that hardly a vestige even of champerty remained there. *Stanlly* v. *Jones*, 5 *Moor. & Payne*, 193. 7 *Bing*. 369, *S. C.* Mr. Serjeant Russel referred to the remarks of Bayley and Holroyd, Js. in *Bell* v. *Smith*, and this, it seems, was the only modern judicial authority he could find, to prove that the doctrine had not gone into almost total desuetude. Tindal, C. J. shewed, as the counsel for the defendant has done more at large in the case at bar, that the doctrine is not absolutely unknown even in the court of chancery. It is remarkable that both *Stanley* v. *Jones* and the case cited by Tindal, C. from chancery, *Stevens* v. *Bagwell*, 15 *Ves.* 139, 156, were neither of them much more than simple assignments of choses in action. Yet because in one case there was an agreement by the assignee to exert his influence in obtaining testimony to support the claim, and in the other an agreement to carry on the suit, they were both pronounced cases of champerty. Either office, at least with us, would be deemed the legitimate business of the assignee as implied from the nature of the assignment. If the decision in *Stanley* v. *Jones* could be sustained under the English notion of the right created by the assignment of a chose in action, I should suppose it could only be on the feature mentioned by the chief justice, that the assignee was to be paid out of the claim, an amount in proportion to the effect to be produced by the evidence he should procure, in enlarging the sum to be recovered. Such a motive, it was said, might lead to improper practices, 5 *Moor. & Payne*, 207; and yet it is obvious that the same motive always exists in every claimant who goes to law for his demand, whether it arise originally in his own right or that of his assignor.

But be the English law as it may ; with us, at least, I should apprehend it would now be very difficult to say there can be a case of maintenance beyond the purview of our new Revised Statutes. Indeed the contrary was not very strenuously insisted upon in the argument of the principal case. Our attention was called to the evidence, as possibly furnishing ground for saying that the

Bennett v. Lockwood.

defendant's covenant was the result of a conspiracy to maintain a false claim by Mr. Feeter, and Mott, the plaintiff.  In regard to that, we have only to repeat what we said at New-York, where the case was called upon the calendar as frivolous: "there is no color for the allegation."  The defendant came in under the hope which actuated Mott's counsel, that Mr. Feeter's testimony would support the claim.  I held the circuit, and presided at the trial wherein Mr. Feeter was first introduced as a witness ; and had all the circumstances been then disclosed, I could not have hesitated to say that every part of the transaction was beyond the suspicion of any thing illegal or dishonorable.

A new trial must be denied.*

* See the case of *Benedict* v. *Hecox*, decided in the supreme court, and affirmed in the *court for the correction of errors*, 18 Wendell, 490.