## PECK *vs.* BRIGGS & CANFIELD.

Money knowingly lent to be used in betting or gaming cannot be recovered from the borrower. *Per* BRONSON, C. J.

But where one borrowed money to bet on an election, and deposited it with the lender as a stakeholder and lost the bet, and the stakeholder paid it to the winner on his agreeing to return it in case the loser who had borrowed it would not repay it; *held* that such agreement was not against the policy of the statute, but was binding.

And where the winner, after receiving the money as above stated, agreed that if the stakeholder would sue the loser for the money which he had borrowed and staked, and should fail to recover, he (the winner) would, in addition to returning the money, pay the costs of the suit; *held* that this also was a valid agreement, and not in conflict with the terms or policy of the statute.

ERROR to Dutchess C. P. Briggs & Canfield sued Peck before a justice, and the cause went to the C. P. by appeal. The declaration contained the money counts, and a special count. The case was this: In September, 1840, the defendant and one Smith Tompkins were at the store of the plaintiffs, and made a bet of $10 of a side on the then pending presidential election. The defendant and Tompkins each borrowed $10 of the plaintiffs for the purpose of staking it on the election ; and the money was then placed in the hands of the plaintiff Briggs as the stakeholder. Tompkins lost the wager, and the defendant called for the money. Briggs hesitated about giving it up, fearing that Tompkins would not pay the $10 he had borrowed of the plaintiffs; but he finally paid over the money to the defendant, on his agreeing to refund it if Tompkins objected, or should refuse to pay. Tompkins refused to pay, and the plaintiffs called on the defendant for the $10. The defendant said the plaintiffs could compel Tompkins to pay the money, and desired them to sue Tompkins for it ; and the defendant agreed that if the suit failed, he would pay the plaintiffs the $10, and all the costs and expenses of the suit. The plaintiffs then sued Tompkins before a justice, and recovered the $10 ; but the judgment was afterwards reversed ; and the plaintiffs paid $40 for the costs of the suit. This action was brought to recover the $10 and the $40 ; and the C. P. held that the plaintiff could recover.

There was a verdict for $52,81, and judgment for the plaintiffs. The defendant brings error on a bill of exceptions.

*R. Peck*, for the plaintiff in error.

*A. L. Pinney*, for the defendants in error.

*By the Court*, BRONSON, Ch. J.    The statute of 9 Ann c. 14, which has been re-enacted in this state, (1 *R. L.* 152 ; 1 *R. S.* 663, § 16 ;) made void all *securities* given for money won at play, or for the repayment of money knowingly lent or advanced for gaming or betting ; but it did not annul the *contract :* and it was therefore held that money lent to game with, or to pay a gaming debt, might be recovered from the borrower. (*Barjeau* v. *Walmsley,* 2 *Stra.* 1249 ; *Robinson* v. *Bland,* 2 *Burr.* 1077 ; 1 *W. Black. R.* 234, 260, *S. C.* ; *Alcinbrook* v. *Hall,* 2 *Wils.* 309 ; *Wettenhall* v. *Wood,* 1 *Esp.* 18.)    But the present statute goes further than the 9 Ann c. 14, and declares, that " all wagers, bets, or stakes made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be *unlawful :*" and it is added, that " all *contracts* for or on account of any money or property, or thing in action so wagered, bet or staked, shall be void."    (1 *R. S.* 662, § 8.)    If the money or property has been paid, delivered or deposited, it may be recovered back from the winner, and whether the wager be lost or not; and it may be recovered from the stakeholder, notwithstanding he may have paid it over to the winner.    (§ 9.)    Since the passing of this statute, I do not see how money knowingly lent for the purpose of betting or gaming can be recovered from the borrower.

But that does not decide this case.    The plaintiffs are not suing to recover the ten dollars which they loaned to the defendant for the purpose of enabling him to make the bet.    They seek to recall the amount which was deposited by Tompkins, and which was paid over to the defendant on the ground that he had won the wager ; and on his agreement to refund the money in case Tompkins should not approve of the payment.

So far as relates to the money thus paid over to the defendant as a w'nner, the action is not against the policy of the statute ; but the reverse. It disaffirms the wager, and advances the policy of the law.

Let us now see how the plaintiffs stand in relation to the other branch of their claim. It will be proper here to notice the rights of the parties as they stood before the money was paid over. And in the first place, although the defendant had won the wager, he had no legal title to the money. If paid to him, it might be recovered back. The plaintiffs could not recover from Tompkins the money which they loaned him to make the bet, because it was loaned for an unlawful purpose. But Tompkins could not recover from them, because he had not in fact paid the money. The plaintiffs were therefore safe. The amount which they had loaned, was in the hands of Briggs as a stakeholder, and no one could recover it from him. In this state of things the defendant applied for and received the money, on a promise to refund it in case Tompkins should not approve of the payment. And when Tompkins refused to ratify the payment, the defendant requested the plaintiffs to sue Tompkins for the ten dollars which he had borrowed,.and promised to repay the money in case the suit failed; and also to indemnify the plaintiffs against the costs and expenses of the litigation. The promise was based upon a sufficient consideration, and I see no reason why its performance should not be enforced by action. The defendant has got ten dollars of the plaintiffs' money, and has induced them to expend forty dollars more for his benefit. His promise to refund the money and indemnify the plaintiffs did not contravene either the letter or spirit of the gaming act ; and the court below was right in holding him bound by the engagement.

It is then said, that the agreement about the suit against Tompkins was void on the ground of maintenance. In the late revision of the laws, nothing was left of the old doctrine of maintenance, beyond a prohibition against taking a conveyance of lands in suit, buying or selling pretended titles, and conspiracies falsely to move or maintain suits. (2 *R. S.* 691, § 5 *to* 8 ;

*Mott* v. *Small,* 20 *Wend.* 212 ; 22 *id.* 403, *S. C. in error.*) I see no color for the argument that this case is within the statute.

Judgment affirmed.