## WINCHESTER v. NUTTER & A.

The common law allowing actions to be maintained upon a wager, in cases not contrary to public policy, or prohibited by statute, has never been adopted in this State.

In this State, all wager contracts are void; but a bet or wager, unconnected with a criminal offence, is no offence against the criminal law.

A bet upon the result of a squirrel hunt is not a violation of any law of this State.

The plaintiff presided at a meeting at which it was agreed to have a squirrel hunt. The side that should be beaten in the contest was to pay for supper for both sides. It was arranged that each man should pay for his own supper, and for that of one man on the victorious side; but the two captains (the defendants) were to engage and be responsible for the suppers for all the men, and the matter was to be afterwards adjusted between the captains and their men  In pursuance of this arrangement, the plaintiff furnished suppers for all the men, knowing and understanding fully how the suppers were to be paid for in the end. *Held*, that the plaintiff was entitled to recover of the two defendants the price of all the suppers.

ASSUMPSIT, by Cummings M. Winchester against Oscar Nutter and Elden Farnham, upon an account annexed, "for furnishing twenty-four suppers, at your request, at seventy-five cents each, price agreed, $18." It appeared, in evidence, that the plaintiff and two defendants and several others met one evening at a school-house in Lancaster, for the purpose of considering the subject of having a squirrel hunt in that neighborhood. The plaintiff was chosen chairman of the meeting. The two defendants were chosen as the leaders of the two opposite sides, called "captains," and accepted that place. They then chose sides, each captain selecting his men alternately, until there were twelve on each side, including the captains. They agreed to have a squirrel hunt, the hunting to begin and close at a fixed time,—after the close of which the game was to be counted according to certain prescribed rules, and the side that got beat was to pay for the suppers for both sides, it being arranged that, in the end, the captains should pay no more than each other man on his side; that each man, on the side that got beat, should pay for his own supper and for that of one man on the side that beat. The question submitted to the jury was as to what was the contract made with the plaintiff, who agreed to furnish the suppers for the whole. The jury found that the contract was that the two captains (the defendants) engaged the suppers, and were to be responsible to the plaintiff for the whole of them, and the matter was to be afterwards adjusted between the captains and their men. It appeared that the plain-

tiff knew and understood fully all these arrangements as to how the supper was to be paid for in the end.

The defendants moved the court to nonsuit the plaintiff, upon the ground that this whole transaction was simply a bet or wager for the suppers, and that the plaintiff's claim in this case "grows out of such bet or wager," under the provisions of ch. 254, sec. 12, Gen. Stats. The court, *pro forma*, overruled this motion, and the defendants excepted.

The question of law thus raised was reserved.

*Fletcher & Heywood* and *E. Fletcher*, for the defendants.

The courts of this State will not sustain a suit which is based on a gambling or betting contract. *Perkins* v. *Eaton*, 3 N. H. 152.

1. The plaintiff participated in the preliminary meeting to arrange for a squirrel hunt, and was chosen and acted as chairman, and well knew that the side that got beat was to pay for the twenty-four suppers. This was a bet, to be decided by luck, skill, fraud, cheating, and stealing, combined. And the law do n't regard the amount of the bet, whether it is something to eat, drink, or to wear; and it is gambling, even if worse than nothing, as in the case of *State* v. *Leicht*, 17 Iowa 28, where it was decided that playing with cards, with an agreement that the losing party shall pay for the drinks, constitutes gambling. Suppose, instead of suppers, it had been money, a hunting-horn, or a silver drinking-cup which was to be furnished the members of the successful side.

2. If the plaintiff had failed to furnish the suppers, could these defendants have sustained an action?

Every contract, as a general rule, must be of such a character that either party can sustain a suit upon it for a breach; and we submit that no such action would lie.

3. Another reason why the plaintiff is remediless is, because he knowingly aided the defendants in a breach of the law, and therefore he cannot recover upon the contract. See *Bloxome* v. *Williams*, 3 B. & C. 232. Both parties are *in pari delicto*. *Welsh* v. *Cutler*, 44 N. H. 561; *Stacy* v. *Foss*, 19 Me. 335; *Murdock* v. *Kilbourn*, 6 Wis. 468. One who keeps a shop for the sale of beer, cigars, &c., and allows his customers to play games for such articles, he furnishing such articles at the end of the games and charging the loser, is guilty of violating the statute against gambling, although such gambling takes place only occasionally. *Hitchins* v. *People*, 39 N. Y. 454.

*Ray & Drew* and *G. A. Bingham*, for the plaintiff.

The finding of the jury settles the question that the plaintiff was no party to and had no interest in the supposed bet or wager stated in the case, and hence is not affected by the provisions of secs. 12, 13, and 14 of ch. 254 of Gen. Stats.

The authorities cited by the defendants have no application to this cause. The plaintiff made an independent and absolute bargain with the defendants to furnish the twenty-four suppers on their sole credit, without depending upon any contingency whatever, and without regard to the result of any wager between them or their respective sides.

The plaintiff agreed to provide and the defendants agreed to pay for the suppers anyhow.

That was a legal and valid bargain, one which the parties had a right to make, and such a transaction is nowhere prohibited in our statutes.

The decisions upon this subject relate directly to the parties to the bet or wager, and not to one who has no interest in the matter one way or the other, like this plaintiff.

FOSTER, J.* The plaintiff furnished, sold, and delivered to the defendants, at their special request, twenty-four suppers : why should not the defendants pay for them, there being no controversy about the price or the quality of the article furnished ?

The plaintiff has fully performed his part of the contract: why should not the defendants perform their part ?

Because, they say, that although they have received and eaten the plaintiff's suppers, still those suppers were provided in order to enable certain parties to pay a bet or wager; therefore, the contract for the purchase and sale of these suppers grew out of a bet or wager ; and such a contract, they contend, is illegal and void, and in any effort to enforce it, *potior est conditio defendentis*.

If this contract is held void, it can only be on the ground that the wager was illegal—a violation of law; and that the plaintiff, by contracting to furnish the suppers absolutely, whatever might be the result of the squirrel hunt, for a certain price and payment, absolute and unconditional, to these two defendants, whether they or the party that either one of them represented should be defeated or not in the event of the hunt, aided, abetted, counselled, hired, or procured the commission of a crime or a misdemeanor.

At common law, some contracts of wager are valid and some are void. 2 Pars. on Con. 627, 755. But the common law, allowing actions to be maintained upon a wager in cases not contrary to public policy nor prohibited by statute, has never been adopted in New Hampshire.

Here all wagers are void contracts. *Perkins* v. *Eaton*, 3 N. H. 152 ; *Hoit* v. *Hodge*, 6 N. H. 104. This is not because the contract is to commit or be accessory to a crime or a misdemeanor, for a wager contract is neither a crime nor a misdemeanor. Mere betting, unconnected with a criminal offence, is no offence against the criminal law. Neither the common law nor any statute of this State affixes any penalty to betting, as a criminal offence, or in any respect a misdemeanor.

LADD, J., did not sit.

The plaintiff presided at the meeting at which the arrangements for the hunt and for the subsequent suppers were made. He knew and understood fully all these arrangements. And so he may be said to have aided and abetted the transaction. But as the wager was not a misdemeanor, the plaintiff, in aiding the wager, did not aid a misdemeanor.

Here was no offence against the common law. How is the transaction to be viewed in the light of our statutes, and how is it affected by them? The wager contract is simply a void contract.

Section 12 of ch. 254, Gen. Stats., provides that "all bets and wagers, upon any question where the parties have no interest in the subject except that created by the wager, are void; and either party may recover any property by him deposited, paid, or delivered upon such wager or its loss, and repel any action brought for anything, the right or claim to which grows out of such bet or wager."

The contract of wager, then, as between the parties to that contract, the winning and losing parties in the result of the hunt, was a void contract. But it was not void as being an undertaking to violate the law, nor as an undertaking involving any violation of law punishable by a penalty as an offence against the criminal law.

The criminal law does not prohibit the contract. The criminal law is not violated by it. The criminal law affixes no penalty to the making or execution of the contract. The contract is in no way connected with a violation of the criminal law, for betting is not a violation of the criminal law.

Therefore, the doctrine of *particeps criminis* does not arise, and cannot be applied, because there is no *crimen;* no statutory nor common law offence, no municipal regulation nor ordinance,—nothing but a special statute imposing no penalty by virtue of any criminal process or proceeding, and not declaring a wager to be a misdemeanor, but merely denying a civil remedy and annulling a contract upon grounds of supposed public policy.

What is the public policy? Probably to restrain the tendency to idleness and improvidence, which is likely to be promoted by indulgence in the habit of betting. But public policy has not seemed to require that such amusements should be punished as a crime or misdemeanor, nor even that they should be so much as forbidden, by the language of the law. The act of betting and the contract of wager is, therefore, neither *malum in se*, nor *malum prohibitum*, in the eye or the letter of the law.

Furthermore, as to the public policy, then, of the special statute referred to, which only renders the contract of wager void, its purpose and intent may be gathered from an additional part of the statute; for a subsequent section of the same chapter—section 14—furnishes a definition of the terms bet or wager, as employed in the previous section. "Any contract or agreement for the purchase, sale, loan, payment, or use of money or property, real or personal, the terms of which are made to depend upon, or are to be varied or affected by, any uncer-

tain event in which the parties have no interest except that created by such contract or agreement, shall be deemed a bet or wager."

Now, it seems very clear that the idea of the special statute, section 12, is to declare void and to annul all contracts, the consideration or performance of which depends upon such an uncertain event as is mentioned in section 14,—that is, where one party's consideration, to be furnished, and the other party's performance or payment is to be furnished or made, according as such uncertain event may happen ; in other words, where the contract is to be performed if the uncertain event happen, and not to be performed if it does not happen, or *vice versa.*

The statute, then, evidently applies to a party to the transaction, and under its provisions the losing party may successfully resist an action to recover the money or value of the thing forfeited by the terms of the wager, or any action to recover damages for the nonperformance of any act stipulated to be done, or for the omission of performance of any act stipulated not to be done, or indeed any action founded upon anything growing out of the wager.

And this immunity from liability would probably attach to any person not directly a party to the wager, who might be so identified with the transaction as that his cause, claim, or rights should grow out of and depend upon the uncertain event which was the subject of the wager.

But, as between the parties to this suit, there was no element of uncertainty involved in *their* contract. The defendants contracted with the plaintiff that he should furnish for them twenty-four suppers, at seventy-five cents each, upon their credit. They agreed to pay for them. This was the whole of the contract. Their own reimbursement was to be regulated independently of their contract with the plaintiff. He was not to gain or lose by the success or the defeat of either party. The consideration for the defendant's promise was the suppers, which the two defendants were to have and dispose of as they might see fit. They might eat the twenty-four suppers themselves, or give them to their dogs. They were to receive so much food, absolutely and at all events. They, and only they, were to pay the plaintiff for it, absolutely and at all events. There was no element of uncertainty on either side of this contract.

It is said that money lent for the purpose of betting cannot be recovered by the lender of the borrower—*Peck* v. *Briggs*, 3 Denio 107 ; *Ruckman* v. *Bryan, ib.* 340 ; 2 Par. on Cont. 756, note *k ;* but that depends entirely upon the question whether the wager was a crime or a misdemeanor, or a contract connected with a violation of law.

So, a note given for money knowingly lent to be applied for the suppression of a prosecution for crime is void—*Plumer* v. *Smith*, 5 N. H. 553 ; but, by RICHARDSON, C. J., " it is most unquestionably illegal, in a private individual, to suppress a criminal prosecution."

A bet upon the result of a squirrel hunt is, most unquestionably, not a violation of any law of this State.

The defendants' exception is therefore overruled, and their motion for a                                                    *Nonsuit denied.*