## Evans *versus* Dela.

In an action on a promissory note, a party who had been the holder of it, before maturity, but had passed it by delivery, without his endorsement, is a competent witness for the plaintiff, to prove the consideration.

The rule established in Post *v.* Avery, and kindred cases, was not intended to render persons incompetent as witnesses, who were competent at common law.

ERROR to the District Court of *Philadelphia.*

This was an action of *assumpsit* by Lewis Dela against David Z. Evans on a promissory note, of which the following is a copy :—

"Philadelphia, April 4th 1857.

"Dolls. 601$\frac{50}{100}$.

"Two months after date, I promise to pay to the order of Wm. B. Gendell, six hundred and one dollars $\frac{50}{100}$, without defalcation, value received.                              "D. Z. EVANS.

Endorsed—"WM. B. GENDELL."

The defence was, that the note was made for the accommodation of Gendell, the endorser, who had passed it to Howard Tilden, and had subsequently paid Tilden the amount advanced on it; and that the plaintiff became the holder of it after maturity.

On the trial, the plaintiff offered Howard Tilden as a witness, to prove the consideration between himself and Gendell, the payee. The defendant objected to the competency of the witness, but the court below overruled the objection, admitted the witness, and sealed a bill of exceptions.

There was a verdict for the plaintiff for $660.44, and on a motion for a new trial, the following opinion was delivered in the court below, by STROUD, J. :—

"The plaintiff, as holder of a promissory note made by the defendant, payable to the order of Gendell, and by him endorsed, brought the present action. There was no dispute as to genuineness of the note, and it was, without objection, put in evidence by the plaintiff, after proof of the handwriting of Gendell had been made.

"The facts alleged and attempted to be proved by the defendant, and which he relied upon as a defence, were, that Evans and Gendell, the maker and the payee of the note, had had extensive dealings together in the exchange of each other's promissory notes; that the note in suit was a note of this kind; that it had been executed by Evans, and then handed by him to Gendell in exchange for a contemporaneous note for an equal amount made by Gendell in favour of Evans, which would fall due on the same day.

[Evans *v.* Dela.]

" It was alleged, and some evidence given tending to establish the fact, that the plaintiff did not come into possession of the note until after its maturity.   And the final effort of the defendant was to produce a note which he asserted had been received by him of Evans in exchange for the note declared upon, and which he claimed a right to use as a payment or set-off against the plaintiff.   The last effort was entirely unsuccessful, and the offered note was excluded.

" Whether or not the whole of the evidence proposed to be given, in connection with what had been received, would have constituted a defence to the action, it is not necessary to consider. It is enough to state, that the plaintiff's counsel, through abundance of caution, deemed it expedient to offer Tilden as a witness, to show that the note in suit had been purchased by him of Gendell before its maturity; that Gendell, as payee, had then endorsed and delivered it to him, and that he had sold and delivered it to the plaintiff.

" There was no pretence of knowledge in Tilden, when he received the note of Gendell, of any fact which would invalidate his right to demand the whole amount expressed on its face.   The transfer by him to the plaintiff would consequently clothe the plaintiff with an equal right.

" The defendant's counsel objected to the reception of Tilden as a witness, alleging his incompetency on the ground that he had once been the owner of the note, and that the plaintiff had obtained it directly from him.   This objection was affirmed on the authority of Post *v.* Avery, 5 *W. & S.* 509, and the decisions which had followed it in the Supreme Court, professedly based on that case.

" It is related by Sugden, that some years before he wrote, a question was suddenly started in England, whether a middle landlord had a right to distrain the goods of his tenant for rent *arrere*. The practice had been exercised time immemorial, and universally acquiesced in.

" A similar statement may be made in respect to the question raised on the trial of this cause, as to the competency of Tilden as a witness, for the purpose for which he was offered.

" The note was in the usual form, expressing in the body of it that it was made for value received.   The *prima facies* of the endorsement and delivery by the payee was, that these acts had been done upon a valuable consideration.   It was on this footing that what had been shown by the plaintiff preliminarily to the offer of the note in evidence, and upon which it had been received, constituted a *primâ facie* right to a recovery, that at this stage of the trial he rested.

" Before entering upon the examination of the decisions relied upon by the defendant for the rejection of Tilden, it may be well

stated, that irrespective of the modern legislation of the British parliament, by which objection to the competency of a witness on the score of interest is disallowed, a witness standing in the relation to the cause which Tilden held when he was offered, would be received without hesitation in the English courts, and in the courts of our sister states; and it is equally certain, that such witnesses have been admitted, again and again, in the courts of this Commonwealth, without objection, and, probably, without suspicion in any quarter, that the slightest ground of objection existed; nor has there been to this day any adjudication of the Supreme Court adverse to the reception of such testimony.

"What, then, has given rise to the doubt of Tilden's competency in the present case? The answer to be given to this question is, that in 1811, the Supreme Court, in Steele v. The Phœnix Insurance Company, 3 Binn. 306, decided that the assignor of a chose in action, although nominally the plaintiff on the record, might, on being divested of all interest in the cause, be a witness for the beneficial plaintiff, the assignee. This decision was the proper, not to say necessary, consequence of the non-existence of a Court of Chancery, which had led to the blending of law and equity principles in the practice of the courts. The principle of the decision was so plain, and so entirely free from all objection, that it was adopted by Judge WASHINGTON, with strong commendation, in Willings v. Consequa, 1 Pet. C. C. Rep. 308. It retained its authority undiminished and almost unquestioned until 1843, during which period there had been a succession of eminent jurists on the bench of the Supreme Court, by none of whom had a word in disapprobation of its principles been expressed.

"In 1843, however, in the case of Post v. Avery, before mentioned, the soundness of this long-sustained decision was directly questioned. It was the only point raised by the bill of exceptions. The judgment of the court below, which was in entire consonance with Steele v. The Phœnix Insurance Company, was reversed. Chief Justice GIBSON, who gave the opinion of the court, after alluding to Steele v. The Phœnix Insurance Company, declared that the decision was 'faultless in theory,' 'technically unobjectionable,' 'too deeply seated in authority to be eradicated;'' that the court 'did not propose to eradicate it;' adding, that the legislature was the only power by which it could be abolished.

"The result of the opinion was the imposition of a limitation on the generality of the doctrine of Steele v. The Phœnix Insurance Company. The assignor, though a nominal plaintiff, was not necessarily to be excluded as a witness for the assignee. Certain tests were established by which his incompetency might be infallibly determined; beyond which the decision did not reach. The sudden change in the law of evidence thus announced was followed by reversal upon reversal of judgments in the inferior courts, the

judges of which, as in duty bound, had conformed to the doctrine of Steele *v.* The Phœnix Insurance Company; and even after the publication, in its regular order, of Post *v.* Avery, from a misapprehension of its true import, or because the Supreme Court subsequently determined to enlarge the sphere of that decision beyond the limits which the guarded language of the Chief Justice plainly expressed, or from the want of congruity in the succeeding judgments of the Supreme Court itself, the rulings of the courts below upon questions of evidence supposed to fall within the principle of Post *v.* Avery, were, ever and anon, pronounced erroneous. Of the more than forty volumes of later reports of the decisions of the Supreme Court, scarcely one can be searched carefully without bringing to notice the difficulty almost universally experienced by courts and counsel of understanding and applying the law of Post *v.* Avery and its asserted cognates.

"The present inquiry does not call for a very special examination of these numerous decisions. It is sufficient to say, that in the course of a few years, the departure from Post *v.* Avery had become so great, that the court declared that an invincible necessity existed of overruling Steele *v.* The Phœnix Insurance Company altogether: McClelland *v.* Mahon, 1 *Barr* 364. But even after this, the cases show that no settled conclusion had been reached among the members of the court, as to the extent to which the court had gone or intended to go. See Roshing *v.* Chandler, 3 *Barr* 375; Burrows *v.* Shultz, 6 *Id.* 326; Carter *v.* Trueman, 7 *Id.* 326; Taylor *v.* Gitt, 10 *Id.* 430; Miller *v.* Stem, 2 *Jones* 385; Search's Appeal, 1 *Harris* 110; Graves *v.* Griffin, 7 *Id.* 176; Haus *v.* Palmer, 9 *Id.* 298; Hartman *v.* The Keystone Insurance Company, *Id.* 476; and Lindsley *v.* Malone, 11 *Id.* 24.

"In many of these decisions it is distinctly declared, that the grounds upon which the court proceeded in Post *v.* Avery, and throughout the series, were two. These are briefly characterized, on several occasions, public policy and private justice.

"What is included under the head of public policy, is again and again asserted to be 'to prevent temptation to perjury.' Private justice seems to be the preservation of parity of right between parties to the same contract; the theory being that it is unjust to permit one party to a contract to be a witness, whilst the mouth of the other is closed. See particularly 7 *W. & S.* 147; 1 *Barr* 176; and 2 *Id.* 47.

"None of the decisions which have been cited were upon promissory notes; and there is a wide distinction between these and other choses in action, arising chiefly from the quality of negotiability of the former, which enables the holder, though not an original party to the instrument, to bring suit directly in his own name; whilst the latter class are, at most, merely assignable,

giving an equity to the assignee to use the name of the assignor as plaintiff in an action for the benefit of the assignee.

"There are two decisions which are spoken of by the reporters as founded upon promissory notes, in which questions upon the competency of witnesses were determined upon the authority of the Post v. Avery cases; one of these is Bailey v. Knapp, 7 *Harris* 193; the other, Hatz v. Snyder, 2 *Casey* 511.

The instrument of writing which gave rise to Bailey v. Knapp, was altogether peculiar; it was in these words:—

"'For value received, I promise to pay Ransom & Wallis, or the bearer, eighty dollars, on demand, with interest, without defalcation or stay of execution. Witness my hand and seal at Wysox, this 13th day of October 1837.'

"'WILLIAM KNAPP.' [L. S.]

"Under the name of William Knapp, was written the name William C. Knapp. William C. Knapp was the defendant in the action. There were two counts in the declaration. On the first no recovery was sought. In the second count it was alleged, that the defendant, on the 1st of May 1844, executed a note in writing, by signing his name thereunto, the same bearing date the 13th day of October 1837, by which note he promised to pay as stated in the note, and then and there, to wit, on the 1st of May 1834, delivered the same to Ransom & Wallis, who, for a valuable consideration, then and there delivered the same to the plaintiff, &c. The defendant pleaded *non assumpsit*, and the statute of limitations.

"There was such a manifest variance between the instrument of writing as above set out and the description in the declaration, that it could not be received in evidence upon the mere proof of the handwriting of the defendant. It became necessary, therefore, to supply the defects and patch up the evidence by oral testimony, in order to give a semblance of agreement between the *allegata* and *probata*, and for this purpose Ransom, one of the payees, was offered as a witness. The witness was objected to on the authority of Post v. Avery, and the cases which followed it as a precedent, and the objection was sustained. The Supreme Court affirmed the judgment, on the distinct ground of *stare decisis*, regarding Post v. Avery as the original of the series.

"It is obvious, that the two reasons which form the alleged ground-work of the decision in Post v. Avery, obtained in full force in Bailey v. Knapp. Without the testimony of Ransom, the plaintiff had not the pretence of a case. He was a party named in the original contract, which was a specialty of 1837, and also to the oral agreement of 1844. William C. Knapp, the defendant, was not a party nor in any way connected with the

original contract. It was on the subsequent agreement, the oral one of 1844, as appears by the declaration and the offered evidence, that the defendant's liability was supposed to arise. The time when this was made was of vital importance, since the statute of limitations was pleaded, and yet it was not contained in the written instrument. The declaration and the evidence offered stated the time to have been 1844. But this date was known to Ransom only. In fact, the name of the defendant was the only part of the second and essential agreement which was in writing. Whatever force, therefore, may be attributed to the alleged grounds of Post *v.* Avery, existed in Bailey *v.* Knapp; and it is accordingly, in the opinion of the court, put upon the doctrine of *stare decisis*, as before stated.

"In respect to Hatz *v.* Snyder, whilst it seems scarcely possible that it will ever be regarded in the Supreme Court as a binding authority, yet it is freely admitted, that were our case precisely similar, or could it be shown to rest on the same principles, it would be our plain duty to follow it; this has been the avowed and uniform practice of this court. But there are wanting in our case the essential elements upon which the Post *v.* Avery cases rest.

"First. Tilden was not a party to the original contract evidenced by the promissory note, nor in truth, a party in any proper sense, at any time, or with any person whose name was upon it. There is, therefore, no pretence for excluding his testimony, on the novel ground that it would be unjust to permit him to testify, because the defendant, the maker of the note and interested directly to the full extent of the sum demanded, could not be heard.

"Secondly. Tilden having sold the note to the plaintiff, and without endorsing it, handed it over to him, and its genuineness being admitted, he was at no time under liability to any one upon it. He had no interest in the verdict. He stood indifferently between the parties. There is no pretence, therefore, for saying that he was under temptation to commit perjury. In Hatz *v.* Snyder, it is asserted that the witness was exposed to both objections which have been adverted to, and an inherent potency is ascribed to these which could not be divested or resisted.

"There is no ground for the supposition that he parted with the note in order that he might be a witness. It would be gratuitous to say, in the language of some of the Post *v.* Avery cases, that he had put his oath in the market—that what he received on the sale of the note, was given in part upon the consideration that he would support the plaintiff's cause by his oath. No necessity existed in order to make the defendant liable in an action, that it should be brought by some other than he. On the contrary, in his hands, having been received for full value, and before it was due, and in the usual course of business, all of which are pre-

sumptions of law, no defence could have been made against his recovery in his own name.

"Even where the action was not upon a negotiable instrument, where the transfer of the chose in action which was the subject of the suit, had been made a considerable time before the suit was instituted, it was held that the competency of the witness could not be questioned: Roshing v. Chandler, 3 *Barr* 375; Beaver v. Beaver, 11 *Harris* 167. Rule discharged."

Judgment having, accordingly, been entered on the verdict, the defendant sued out this writ, and here assigned for error, *inter alia*, that the court below erred in admitting Tilden as a witness for the plaintiff.

*F. Carroll Brewster*, for the plaintiff in error, cited Post v. Avery, 5 *W. & S.* 509; Leiper v. Pierce, 6 *Id.* 556; Patterson v. Reed, 7 *Id.* 145; Cochran v. McTeague, 8 *Id.* 272; Phinney v. Tracey, 1 *Barr* 175; McClelland v. Mahon, *Id.* 364; Clover v. Painter, 2 *Id.* 46; Muirhead v. Kirkpatrick, *Id.* 426; Asay v. Hoover, 5 *Id.* 37; Gilpin v. Howell, *Id.* 51; Grayson's Appeal, *Id.* 396; Burrows v. Shultz, 6 *Id.* 325; Wilkinson v. Turnpike Company, *Id.* 400; Carter v. Trueman, 7 *Id.* 326; Taylor v. Gitt, 10 *Id.* 431; Miller v. Stem, 2 *Jones* 385; Search's Appeal, 1 *Harris* 110; Graves v. Griffin, 7 *Id.* 177; Bailey v. Knapp, *Id.* 192; Haus v. Palmer, 9 *Id.* 298; Hartman v. Insurance Company, *Id.* 476; Lindsley v. Malone, 11 *Id.* 24; Hatz v. Snyder, 2 *Casey* 512; Commonwealth v. Railroad Company, *Grant's Cas.* 329.

*Juvenal*, for the defendant, cited and relied upon the opinion delivered in the court below for a correct exposition of the law of the case.

The opinion of the court was delivered by

STRONG, J.—Post v. Avery, 5 *W. & S.* 509, in which the first departure was made from the doctrine of Steele v. The Phœnix Insurance Company, 3 *Binn.* 306, certainly never was intended to render persons incompetent as witnesses who were competent at common law. Had it been, it would have been a step in the wrong direction. The results of experience have been such that courts have been constrained, as far as possible, to regard objections as affecting the credibility rather than the competency of witnesses. Indeed, it seems not to have been contemplated, when Post v. Avery was decided, that thereby the general rule, established in Steele v. The Phœnix Insurance Company, was unsettled. All that was designed was a qualification. The consequences of the decision were not foreseen, but, like the letting out of water, that which was a streamlet at first, soon became a flood, until in McClelland v. Mahon, 1 *Barr* 364, the rule was entirely

swept away. Numerous other decisions followed, perhaps not all entirely accordant with each other. They profess, however, to aim only at a return to the common law rule, not to introduce new reasons for excluding a witness, or to recognise objections to competency which were unknown to the common law. It is not to be doubted, that in England, even without her recent legislation, and in our sister states, Tilden would be held to have been a competent witness. He was not a party to the suit, and he had no interest in it; he had passed the note to the plaintiff, it is true, but his name did not appear upon it; he had passed it by delivery, not endorsement. Nor was the plaintiff compelled to make title through. Tilden, as was the fact in the cases generally which have followed Post *v.* Avery. His right to sue was complete, as endorsee of the payee. Unless, therefore, in departing from Steele *v.* The Phœnix Insurance Company, we have drifted in the opposite direction far beyond the doctrine of the common law, the testimony of Tilden was properly received. We do not propose to review the cases adjudicated since Post *v.* Avery. It may suffice to observe, that most of them have in view common law contracts. None of them have ruled that an endorser of a promissory note (being released) is not a competent witness for the endorsee, in a suit against the maker, except Hatz *v.* Snyder, 2 *Casey* 511. Bailey *v.* Knapp is sometimes supposed to be another, but erroneously. There the witness was excluded, but the contract upon which suit was brought, was not, in fact, a promissory note. It was rather an oral agreement alleged to have been made by the defendant with the witness. Without his testimony there was not even a *primâ facie* case. He was, therefore, held to be incompetent under the ruling in Post *v.* Avery, and he would have been incompetent at common law.

Between parties to promissory notes or other negotiable instruments, and parties to other contracts, the law always made a wide distinction. The assignee of the former may bring suit in his own name; not so with the assignee of the latter. He must use the name of the legal party, and the law recognises no other.

Hatz *v.* Snyder, it must be conceded, did decide that the payee of a promissory note was, even after release, incompetent to testify for his endorsee, in a suit against the maker. Yet even that case did not go to the great length of ruling that one who never was a party to a note, who never endorsed, but simply transferred it by delivery, is to be excluded. Nor can we so hold without introducing new rules of evidence more stringent than any the common law ever adopted. The witness was, therefore, properly permitted to testify.

There is nothing in any of the other errors assigned, and none of them require particular observation. If Tilden was a competent witness, his testimony, if believed, established the right of

the plaintiff to recover, and the evidence offered and rejected was immaterial. And even without Tilden's testimony, it could not have availed the defendant. It could not avail to prove that the note upon which the suit was founded was anything other than a business note, such as the law presumed it to be. Nor do we discover in the case evidence of any fraud to affect the holder of the note, or of anything which interposed an obstacle in the way of his recovery.

The judgment is affirmed.